## PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* LYNCH.

[No. 6,336.   Filed January 26, 1909.]

1. TRIAL.—*Instructions.—Railroads.—Street Crossings.—Care Required.*—An instruction in a street crossing case that it was the duty of the railroad company "to give timely warning, of the approach of its locomotive and train of cars  *  *  *  to the plaintiff  *  *  *  whether or not there was a statute or ordinance requiring signals to be given at said street crossing, and any failure to exercise this care  *  *  *  was negligence," is not erroneous as a general instruction, there being a subsequent specific instruction outlining the statutory duty of the company as to the sounding of its whistle and the ringing of its bell. p. 179.

2. RAILROADS.—*Street Crossings.—Signals.—Negligence.*—Where a railroad company gives the statutory signals at a street crossing it has discharged its duty, and negligence cannot be imputed against it on account of any conditions which may render such signals inadequate. p. 180.

3. TRIAL.—*Instructions.— Railroads.— Use of Streets.— Care.*—An instruction that defendant railroad company has no exclusive rights in the street and that it must "so use and manage its trains as not to injure others who are lawfully using the street, and the running of trains at a high speed over the crossing, without  *  *  *  ringing a bell or sounding a whistle, will render the company liable if plaintiff was without fault," is not erroneous. p. 180.

4. RAILROADS.—*Using Streets.—Statutory Signals.—Care.*—The giving of the statutory signals by a railroad company using the streets does not wholly absolve it from its duty to care for others using such streets. p. 180.

5. DAMAGES.—*Special.—Railroads.—Care and Medical Services.—Time.*—Damages for care, medical expense and loss of time, caused by the negligence of a railroad company must be specially alleged and proved. p. 182.

6. DAMAGES.—*Special.—Complaint.—Averments of.—Railroads.*—A complaint averring that defendant railroad company negligently injured plaintiff causing him to be "unable to perform manual labor" and causing him "to hire a physician at great expense," and further averring that his injuries are permanent, to his damage in a certain sum, covers special damages proved as to care and medical expense and loss of time. p. 183.

7. RAILROADS. — *Street Crossings. — Negligence. — Contributory. — When Inferences for Jury.*—The questions of negligence and con-

tributory negligence on the part of a railroad company and the driver of a buggy, the evidence showing that the driver stopped, alighted, looked and listened for a train, but neither saw nor heard any, that he drove upon the track, looking and listening, the company's cars obstructing the vision, and was struck by a train, are for the jury. p. 184.

8. NEGLIGENCE.—*Undisputed Facts.—Diverse Inferences.—Duties of Courts.*—Where the facts in a negligence case are undisputed, and a jury and the trial judge have drawn therefrom the inference of defendant's negligence, courts on appeal should be very reluctant to hold that only one inference—that of freedom from negligence—can be drawn by reasonable men. p. 185.

9. NEGLIGENCE.—*Traveler at Railroad Crossing.*—A traveler, upon crossing a railroad track, must act with reasonable care, under the particular circumstances, to avoid injury, the sufficiency of such care being ordinarily a question for the jury. p. 186.

10. NEGLIGENCE.—*Traveler on Railroad Crossing.—Seeing and Hearing.*—The presumption is that a traveler approaching a highway crossing saw and heard a train which was visible and audible, but the law does not prescribe the distance a traveler shall be from the crossing when he must look and listen. p. 186.

11. APPEAL.—*Weighing Evidence.*—The Appellate Court cannot weigh conflicting evidence. p. 186.

From Tipton Circuit Court; *J. F. Elliott,* Judge.

Action by Marion A. Lynch against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*John L. Rupe* and *R. B. Beauchamp,* for appellant.

*William S. Christian, T. J. Bishop* and *Dan Waugh,* for appellee.

HADLEY, J.—Appellee sued appellant for damages on account of injuries sustained in a collision with one of appellant's trains at a highway crossing in the town of Arcadia. The negligence charged in the complaint is running at a high and unusual rate of speed and failing to give proper signals for the crossing at which the accident occurred. Trial was had by a jury, and judgment rendered in favor of appellee for $1,000.

Appellant presents as its first ground for reversal the alleged error of the court in giving instruction four, which,

in connection with instruction three, clearly defined the general duties of the appellee upon approaching the railroad crossing. Instruction four then proceeded to define the general duties of appellant upon the approach of one of its trains to a highway crossing, and in doing so the court used this language: ''While I have instructed you as to the duty and care of the plaintiff in approaching the railroad crossing on Main-street where he was injured, it was the duty of said defendant to give timely warning, of the approach of its locomotive and train of cars on said track, to the plaintiff while approaching said street crossing, and this the defendant was bound to do, whether or not there was a statute or ordinance requiring signals to be given at said street crossing, and any failure to exercise this care required on the part of said defendant at said street crossing, if shown to exist in this case, was negligence on the part of said defendant.'' It is urged against this instruction that the use of the words ''timely warning'' in the instruction is not the true measure of the warning to be given, but what warning should be given is a matter that should be left to the jury, under all the conditions; and also that there is a statute which fixes the measure of appellant's duty in such cases. It is argued that under this instruction the jury was told that it was the appellant's duty to give sufficient warning to appellee in the situation in which he then was with reference to the wind and his ignorance of the approach of the train, matters of which the engineer of appellant's train could have no knowledge. We do not think the instruction is fairly capable of this interpretation. It was simply a general instruction as to general duties, and the court, by instruction twenty-nine, specifically fixed the obligation of the appellant in the particular case by charging that a special statute required the railroad company to sound the whistle at a point from eighty to one hundred rods from a highway crossing, and to ring the bell from such

point until the engine passes over the crossing. This fixed the measure of the company's statutory duty in this regard, and if the evidence shows that the company did this, it discharged such duty, and it was not material in what direction the wind was blowing, and it was not a question for the jury to determine whether the signals, as thus fixed and required by the law, were sufficient or adequate in the case, if such signals as the law specifies were given. The language of instruction four was not incorrect as an abstract proposition of law. See *Indianapolis, etc., R. Co.* v. *McLin* (1882), 82 Ind. 435, and *Cleveland, etc., R. Co.* v. *Miles* (1904), 162 Ind. 646, where the exact language of this instruction is approved.

Objections were made to the giving of instruction five. This was, in effect, that appellant had no exclusive right in the street except to run its trains over the track, and it must so use and manage its trains as not to injure others who are lawfully using the street, and the running of trains at a high speed over the crossing, without giving a reasonable notice and warning by ringing a bell or sounding a whistle, would render the company liable, if plaintiff was without fault.

It is contended that a railroad company running through the streets of a town is not bound so to run its trains as to avoid all injury, as it is urged that this instruction declares the law to be. Taking the instruction as a whole, it is clear that it properly states the obligation of the railroad company. It is the duty of a railroad company operating trains through the town or city so to run its trains and give such warnings as will avoid injury to all persons who are also using said streets with due care and in a proper and lawful manner. And whenever such company fails to perform this duty, as here prescribed, it is liable for damages caused by such failure; and it is not true that a railroad company, which upon approaching a town or city, sounds the whistle from eighty to one hundred rods

before reaching the first crossing in such town or city, has fully discharged its duty to the public, and relieved itself of all liability further to sound its whistle, or give warning, or put its train under control, or in some manner further to protect persons upon the streets of such town or city at subsequent crossings. As is said in _Cleveland, etc., R. Co. v. Miles, supra:_ "It is well settled that where one or more railroad tracks cross a public street of a city in a populous neighborhood, greater vigilance and care on the part of the company to avoid injuring persons using the street are required than at ordinary highway crossings in the country, or in sparsely settled and unfrequented places. In this, as in other cases, the degree of care to be exercised by the company must be commensurate with the dangers of the particular situation created by its use of the street. It may have the right to occupy the street with its tracks, and to use them for the purpose of moving its locomotives, cars, and trains, but it has no exclusive right to the use of the street, and the law imposes upon it, as upon all other persons, the duty of using its property in such manner as not to injure others who are themselves lawfully using the street and crossing. The running of locomotives and trains at a high rate of speed over street crossings in a city, even where the ordinary signals or the statutory warnings are given, may constitute negligence, and render the company liable for injuries occasioned thereby. And, where no signals are required by statute, a failure to give a reasonable notice and warning of the approach of a locomotive, by ringing the bell or sounding the whistle, may subject the company to liability, where a traveler at the crossing is injured without contributory fault on his part. If the dangers of the situation require it, extraordinary precautions must be taken by the company to protect the public from injuries likely to occur at such crossing. Neither the ringing of the locomotive bell, nor the sounding of the whistle, nor the maintenance of a flagman at a street crossing is sufficient of

itself to exonerate the railroad company from responsibility for an accident and injury resulting from the high and dangerous speed of the train, if these precautions are inadequate to render the public reasonably safe and secure in the lawful and careful use of the street.''

It is also urged that the court erred in giving instruction six. By this instruction the court told the jury, among other things, that, in estimating the damages appellee had sustained, they should consider the nature and character of his injuries, if any; whether such injuries are permanent or temporary; his physical pain and suffering, if any, on account of such injury; his loss of time, if any, occasioned thereby and the value thereof, and his reasonable and necessary expenses, if any he has incurred on account of his injuries, including medical services, etc. It is urged against this instruction that it authorized the jury to award special damages for the loss of time and medical attendance, when no special damages are alleged in the complaint. The averments of the complaint as to the injuries and damages are as follows: ''That by reason of the collision plaintiff was thrown thirty or forty feet, and was bruised, mangled and crushed, his left leg broken, his right hip crushed, and he received a great nervous shock, and that he still suffers great pain and nervous shock; that he became sick, sore and unable to perform manual labor, and was compelled to hire a physician and surgeon at great expense to attend him on account of his said injuries; that his injuries are permanent, and he has suffered damages in the sum of $15,000.''

On the trial plaintiff was permitted to detail his injuries and to testify as to the length of time he had been confined to his bed and to the house, and as to his ability to perform labor. Incidentally he detailed the medical attention he had received, but there was no evidence introduced showing what he was able to earn, or the value of the time he lost, or any expenditure for care or medical attendance. It is the law that one may not recover for ex-

penditure for care and medical attention, or for the value of actual time lost, unless facts are averred sufficient to warrant such recovery as special damages. *Union Traction Co.* v. *Sullivan* (1906), 38 Ind. App. 513.

But the averments of the complaint in this case are sufficient to cover the matters mentioned in the instruction as special damages. *Terre Haute Electric Co.* v. *Watson* (1904), 33 Ind. App. 124, and cases cited; *Cincinnati, etc., St. R. Co.* v. *Leonard* (1905), 35 Ind. App. 268; *Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181; *Pittsburgh, etc., R. Co.* v. *Warrum* (1908), 42 Ind. App. 179.

In the case of *Indiana Car Co.* v. *Parker, supra,* the averments of the complaint were, after describing the injury, "that plaintiff's right hand has been permanently injured and ruined, and rendered unfit for use and labor." The court held this was a sufficient averment of special damages, and warranted an instruction that "in computing damages in such a case as this, it is proper to consider * * * the expenses incurred for medical attention, the character of the injury, whether temporary or permanent, and its effect upon the ability of the person injured to earn money or pursue his trade or profession."

In the case of *Terre Haute Electric Co.* v. *Watson, supra,* the averments of the complaint were: "Plaintiff's injuries are permanent and will leave him in a crippled condition for life." The court say: "The purpose of alleging special damages is to give notice thereof that the adverse party may be prepared to meet them. The allegations of the complaint are sufficient for that purpose." This decision was made upon a question of the right of plaintiff to testify as to what he was able to earn before the injury.

In the case of *Pittsburgh, etc., R. Co.* v. *Warrum, supra,* it was averred "that plaintiff was rendered unconscious for three days, and disabled from doing a full day's work." It was held that this was sufficient averment of special dam-

ages to warrant the jury, in computing damages, to take into consideration "loss of time."

In the case of *Union Traction Co.* v. *Sullivan, supra,* the complaint did not allege permanent injury, nor do the averments thereof necessarily imply appreciable loss of time or medical attention, and the rule therein laid down is not applicable to this case.

It is next insisted that the evidence as to the acts of appellee in approaching the track is undisputed, and that these acts clearly show, as a matter of law, that appellee was guilty of contributory negligence. The evidence shows that appellee was familiar with the crossing and of its surroundings. Just prior to his driving upon the track his horse was standing, facing the crossing, in front of a hardware store, less than one hundred feet west of the center of said track. Appellee made some purchases, and placed his purchases in his buggy. He then went around in front of his horse and looked and listened, and neither saw nor heard any train coming. He then got into his buggy and wrapped himself up in his robes, and again looked and listened before starting his horse, and at that time neither heard nor saw an approaching train. He then started in a jog-trot towards the crossing. In driving to the crossing, he was constantly looking and listening for the train. When he reached the crossing he checked his horse, but did not stop, and leaned forward and looked and listened. At no time did he see or hear the train until he was upon the track, and was immediately struck by the train. It was shown that by reason of buildings he could not see up the track from the point where he stopped, and that he could not see up the track at any point between the hardware store and the crossing, by reason of buildings, and of freight-cars standing on the switch track. The evidence is conflicting as to whether the whistle was sounded or the bell rung. This is also true as to the speed of the train, it

being variously estimated at from eight to fifty miles per hour. It was one hour behind schedule time.

It is well settled that the question of negligence ordinarily is a question of fact for the jury; but where the facts are undisputed, and where, from the facts shown, but one inference can be drawn by reasonable men, then the question of negligence becomes one of law for the court. Therefore, before an appellate tribunal can consider the question of negligence as a matter of law it must first determine that the facts are undisputed, and, second, that but one inference may be drawn from said facts by reasonable men; and we are of the opinion that such court should be reluctant to hold that but one inference could be drawn by reasonable men from facts stated, and then proceed to draw an inference that is directly contrary to the inference that has already been drawn by twelve jurors under their oaths and a court under its oath, as well as its judicial responsibility. Especially is this true where there is nothing in the record to show that either the jurors or the court were in anywise prejudiced or were not honest and fair-minded men.

As was said in the case of *Sioux City, etc., R. Co.* v. *Stout* (1873), 17 Wall. (U. S.), 657, 21 L. Ed. 745: "Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proved, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge."

The law requires that a person upon a highway and approaching a railroad crossing must act with reasonable care and prudence, under all the circumstances, to avoid injury; but what amounts to reasonable care and prudence under each and every condition has not been and cannot be governed by prescribed legal rules, since each case must be governed by its own particular circumstance.

In the case before us, appellee had exercised some degree of care and caution. He looked and listened. He was aware of the danger and was mindful of it. Whether he exercised all of the care and caution that an ordinarily prudent man would exercise, under the circumstances under which he was placed, is a question properly for a jury. He stopped, looked and listened when he was one hundred feet away. He was alert and at attention up to the time he got upon the track. He saw all there was to see. That he did not see more was no fault of his, since the appellant had, by its own cars, obstructed the view points. It is presumed he heard all there was to hear. The law does not prescribe when or where one must look and listen before crossing a railroad track, so long as one exercises due care. *Chicago, etc., R. Co.* v. *Turner* (1904), 33 Ind. App. 264; *Lake Shore, etc., R. Co.* v. *Anthony* (1895), 12 Ind. App. 126; *Louisville, etc., R. Co.* v. *Williams* (1898), 20 Ind. App. 576; *Lake Shore, etc., R. Co.* v. *McIntosh* (1895), 140 Ind. 261; *Nichols* v. *Baltimore, etc., R. Co.* (1904), 33 Ind. App. 229.

We cannot weigh or balance the evidence, nor ascertain or determine what we might do if acting as jurors; neither can we say that, from the facts in this case, only one inference can reasonably be drawn from the conduct of appellee, and that that inference is that he did not exercise due care. Whether he exercised such care and was lured to his injury by the failure of appellant to give the necessary warnings, or to use the proper safeguard

to prevent injury, or whether he was negligent in some particular, were matters, under the evidence in this case, properly submitted to the jury; and, having passed upon this question, its decision is binding upon us. We are strengthened in this view upon the consideration of the instructions of the court, which were very full, covering substantially every question in the case, and very strongly in the favor of appellant, in some instances going further than the law required.

Judgment affirmed.