Randall **BAKER, Plaintiff-Appellant,**

v.

**AMERICAN STATES INSURANCE COMPANY, Defendant-Appellee.**

No. 1–681A205.

Court of Appeals of Indiana, First District.

Dec. 15, 1981.

Rehearing Denied Jan. 25, 1982.

Leon D. Cline, Cline, King & Beck, Columbus, for plaintiff-appellant.

Thomas C. Bigley, Jr. and James F. Rosner, Sharpnack, Bigley, David & Rumple, Columbus, for defendant-appellee.

## STATEMENT OF THE CASE

RATLIFF, Judge.

Plaintiff-appellant Randall Baker brings this appeal from the dismissal by the Bartholomew Superior Court of his amended complaint for damages against defendant-appellee American States Insurance Company. We reverse and remand.

## FACTS

The facts as alleged in Baker's amended complaint are essentially as follows. Randall Baker was employed as a carpenter by Claude Wright, doing business as Claude Wright Construction Company of Columbus, Indiana, on July 27, 1978, when he suffered an injury to his left eye while in the course of his employment. The injury was treated by Dr. Fred M. Wilson, II, and other assisting physicians, all of whom were furnished by American States Insurance Company. American States had issued a policy of workmen's compensation insurance to Claude Wright. Baker alleges that he was a third-party beneficiary of the policy and that American States owed him a duty of honesty and fair dealing with regard to claims he might have under the policy.

Baker alleges that as a result of his injuries, he was entitled under state law and the terms of the policy to workmen's compensation benefits for both temporary total disability and permanent partial impairment of his eye. Baker received temporary total disability payments until his eye had healed, but he was left with substantial residual impairment. Baker further alleges that at that time, adjusters for American States fraudulently and knowingly made false statements to him to the effect that Dr. Wilson and the other examining physicians had rated the impairment to Baker's left eye at 24.5%. In reality, the impairment rating given his eye was 62%. These false statements allegedly were made to induce Baker to settle his compensation claim for $2,375.94. Baker contends that

the true impairment rating was concealed from him so as to defraud him of, and to delay the payment of, the full amount of benefits to which he was entitled, causing him great concern, distress, and mental anguish.

Baker asserts that as a result of the fraud, he had to employ an attorney to file and prosecute his claim with the Industrial Board for workmen's compensation benefits. After filing the claim for benefits, he learned the true impairment rating. He was awarded benefits of $7,297.44 on the basis of a 62% permanent partial impairment. However, out of that award he had to pay attorney's fees of $1,394.62, which he would not have incurred but for the fraud of American States.

Baker prayed for compensatory damages of $50,000 and punitive damages of $300,-000.

American States filed a motion to dismiss Baker's amended complaint pursuant to Ind. Rules of Procedure, Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted. The trial court granted the motion and dismissed the complaint on the basis of the following conclusions: (1) Baker failed to exhaust his administrative remedy, provided in Ind.Code 22–3–4–12, for recovery of attorney's fees in addition to the workmen's compensation benefits where the employer is guilty of bad faith or lack of diligence; (2) Baker waived his right to recover attorney's fees for bad faith or lack of diligence by failing to exhaust his administrative remedy or to appeal the award of the Industrial Board; (3) the Workmen's Compensation Act provides the exclusive remedy for attorney's fees incurred for advice and representation in matters before the Industrial Board; (4) there is no right to recover punitive damages where the only actual damages are attorney's fees which are not recoverable in this lawsuit; (5) Baker did not rely to his detriment on false, fraudulent, or misleading statements by American States but instead employed an attorney to prosecute his claim before the Industrial Board. Baker filed a motion to correct errors, which was overruled, and he now appeals to this court.

## ISSUES

1. Whether The Indiana Workmen's Compensation Act of 1929 [1] provides the exclusive remedy for an employee where the employer or its insurer negotiates his claim in bad faith or without due diligence.

2. Whether Baker was a third-party beneficiary of the workmen's compensation insurance policy issued by American States to Claude Wright.

3. Whether the trial court erred in ruling as a matter of law that Baker did not rely to his detriment on representations by American States.

4. Whether Baker may recover damages for fees charged by his examining physician.

5. Whether the trial court erred in ruling that punitive damages are not recoverable in this action.

## DISCUSSION AND DECISION

Baker's amended complaint was dismissed pursuant to T.R. 12(B)(6) for failure to state a claim upon which relief can be granted. In light of our modern rules of notice pleading, we review a T.R. 12(B)(6) dismissal to determine "whether plaintiff's complaint stated any set of allegations, no matter how inartfully pleaded, upon which the court below could have granted relief." *Cochran v. Hallagan*, (1980) Ind.App., 409 N.E.2d 701, 703.

*Issue One*

The threshold question in this appeal is whether Baker's remedies under the Workmen's Compensation Act are exclusive, because, if so, no lawsuit may be maintained.

In Ind.Code 22–3–2–6 we find the following exclusive remedies provision:

---

1. Ind.Code 22–3–2–1 through 22–3–6–3.

"Sec. 6. The rights and remedies herein granted to an employee subject to this act *on account of personal injury or death by accident* shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise, *on account of such injury or death.*" (Our emphasis.)

Clearly, this section by its terms is designed to make the Workmen's Compensation Act the exclusive remedy of an employee "for personal injury or death by accident arising out of and in the course of the employment." Ind.Code 22–3–2–2. However, Baker is not attempting in his amended complaint to recover damages for his eye injury. Instead, he seeks compensatory and punitive damages for harm allegedly suffered as a result of knowing misrepresentations made by adjusters for American States in an attempt to induce him to settle his claim for permanent partial impairment benefits for less than the amount to which he was entitled.

A section more directly in point here is Ind.Code 22–3–4–12, which reads as follows:

"Sec. 12. The fees of attorneys and physicians and charges of nurses and hospitals for services under this act shall be subject to the approval of the industrial board. When any claimant for compensation is represented by an attorney in the prosecution of his claim, the industrial board shall fix and state in the award, if compensation be awarded, the amount of the claimant's attorney's fees. The fee so fixed shall be binding upon both the claimant and his attorney, and the employer shall pay to the attorney out of the award, the fee so fixed and the receipt of the attorney therefor shall fully acquit the employer for an equal portion of the award; Provided, That whenever the industrial board shall determine upon hearing of a claim that the *employer has acted in bad faith in adjusting and settling said award,* or whenever the indus-

trial board shall determine upon hearing of a claim that the employer has not pursued the settlement of said claim with diligence, then the board shall, if compensation be awarded, fix the amount of the claimant's attorneys [sic] fees and such *attorney fees shall be paid to the attorney and shall not be charged against the award to the claimant.* It is further provided that such fees as are fixed and awarded on account of a lack of diligence or because of bad faith on the part of the employer shall not be less than one hundred fifty dollars ($150). The industrial board may withhold the approval of the fees of the attending physician in any case until he shall file (a) report with the industrial board on the form prescribed by such board." (Our emphasis.)

The proviso of IC 22–3–4–12 is binding upon American States by virtue of Ind.Code 22–3–6–1(a), which states that, for the purposes of the Workmen's Compensation Act, the term "employer" includes the employer's insurer where applicable.

Moreover, it is apparent that at least a part of the injury alleged by Baker in his amended complaint is compensable in a proceeding before the Industrial Board. Baker's complaint charged American States with fraudulently misrepresenting his impairment rating, and he alleged that one result of the misrepresentation was that he had to employ an attorney to file and prosecute his claim for workmen's compensation benefits. It has been said in other contexts that "bad faith" and "fraud" are synonymous. *Hilgenberg v. Northup,* (1893) 134 Ind. 92, 33 N.E. 786; *State ex rel. Millice v. Petersen,* (1905) 36 Ind.App. 269, 75 N.E. 602. It would have been appropriate for Baker to have alleged bad faith on the part of American States in his claim before the Industrial Board in order to recover attorney's fees in addition to his award. Baker either did not allege bad faith in his claim before the board or was denied a separate award of attorney's fees, because he alleged in his complaint that he had to pay his

attorney's fees out of his award. We conclude that the provision in IC 22–3–4–12 for an award of attorney's fees where the employer or its insurer is guilty of bad faith in adjusting and settling an award should be deemed Baker's exclusive remedy for attorney's fees. Consequently, attorney's fees are not recoverable under the allegations of Baker's complaint.

The proviso of IC 22–3–4–12 does not purport to be the exclusive remedy for *all* injuries suffered as a result of bad faith in adjusting and settling an award—only for attorney's fees incurred. As we suggested before, IC 22–3–2–6 speaks to personal injury or death by accident on the job, but it does not purport to prohibit actions by an employee against his employer's workmen's compensation insurance carrier for fraudulent misrepresentations made while the employee and the insurer are attempting to settle the claim. Baker could not have brought a lawsuit against his employer for damages for his eye injury. IC 22–3–2–2. However, the alleged fraudulent misrepresentation by American States of Baker's impairment rating is not the kind of harm for which the Workmen's Compensation Act was calculated to compensate, except to the extent that the employee incurs attorney's fees which he otherwise might not have incurred if the insurer had settled in good faith. The alleged fraudulent misrepresentation did not arise "out of and in the course of the employment, . . ." IC 22–3–2–2. *See Reed v. Hartford Accident & Indemnity Co.*, (E.D.Pa.1973) 367 F.Supp. 134; *Vigue v. Evans Products Co.*, (1980) Mont., 608 P.2d 488; *Coleman v. American Universal Insurance Co.*, (1979) 86 Wis.2d 615, 273 N.W.2d 220. Instead, it arose after Baker had been temporarily but totally disabled from working for a period of time. If Baker's allegations regarding the behavior of the adjusters for American States prove to be true, then it is in the public interest of this state to discourage such activities and to compensate the victim for resulting injury. We hold that the Workmen's Compensation Act does not preclude Baker's suit

for damages, except to the extent that he claims attorney's fees as an element of his damages.

*Issue Two*

Having determined that Baker is not statutorily precluded from bringing his suit, we now turn to the matter of whether there was any relief which the trial court could have granted to Baker under the allegations of his amended complaint. *Cochran v. Hallagan*, (1980) Ind.App., 409 N.E.2d 701.

■ Baker alleged in his amended complaint that he was a third-party beneficiary of the workmen's compensation policy issued by American States to Claude Wright and that American States owed him a duty of honesty and fair dealing with regard to his claims under the policy. However, as American States argues, this court in *Bennett v. Slater*, (1972) 154 Ind.App. 67, 289 N.E.2d 144, held that the plaintiff in a negligence suit is not a third-party beneficiary of a duty owed by the defendant's automobile liability insurer to the defendant to accept the plaintiff's reasonable settlement offer. *Accord, Winchell v. Aetna Life & Casualty Insurance Co.*, (1979) Ind. App., 394 N.E.2d 1114. Baker has not persuaded us that his situation is significantly different from that of the plaintiff in *Bennett*. Baker is not a third-party beneficiary of the insurance policy issued by American States to Claude Wright.

*Issue Three*

Baker asserts that the trial court erred in ruling as a matter of law that he did not rely to his detriment upon representations made by adjusters for American States concerning his impairment rating. He maintains that, but for the misrepresentation; he would have had an opportunity to settle his claim for the actual impairment rating and would not have had to employ a physician to examine him and an attorney to file and to prosecute his claim. American States counters this by arguing that Baker's refusal to settle his claim based on a 24.5%

impairment rating and his employment of an attorney show that he did not detrimentally rely upon the representations by American States.

◼ Baker's complaint was clearly intended to allege an actual—or intentional—fraud. It is firmly established in Indiana that the essential elements of actual fraud are a material representation of past or existing facts, which representation is false, made with knowledge or reckless ignorance of its falsity, which causes a reliance to the detriment of the person relying upon it. *Carrell v. Ellingwood*, (1981) Ind.App., 423 N.E.2d 630 (transfer pending); *Blaising v. Mills*, (1978) Ind.App., 374 N.E.2d 1166.

In *Physicians Mutual Insurance Co. v. Savage*, (1973) 156 Ind.App. 283, 296 N.E.2d 165, *trans. denied*, the plaintiff was the executor for the estate of a woman who held a policy of hospitalization and accidental death insurance issued by the defendant insurer. The policy contained a provision excluding from coverage losses resulting from alcoholism. The decedent was fatally injured while operating an automobile at a time when the alcohol content of her bloodstream was .21 percent. The insurer's agent showed the executor a rider which the agent misrepresented as being a part of the decedent's policy. That rider excluded injury sustained as a consequence of the insured's being intoxicated. The agent offered to settle the claim for $1,000—the accidental death benefits under the policy being $10,000—but the executor did not accept the offer and, instead, brought suit against the insurer. The executor recovered compensatory and punitive damages. On appeal, the insurer argued, among other things, that reliance had not been proven. This court held, initially, there was no evidence of alcoholism, in the sense of a continual and excessive use of alcoholic beverages. Furthermore, this court held that whether the plaintiff relied upon a misrepresentation is a question for the trier of fact. *Accord, Carrell v. Ellingwood, supra; Smart & Perry Ford Sales, Inc. v. Weaver*,

(1971) 149 Ind.App. 693, 274 N.E.2d 718. The trial court judgment was affirmed.

◼ Baker's case is in a somewhat different posture from that of *Physicians Mutual* because his complaint was dismissed before the suit could be tried. Nonetheless, we consider *Physicians Mutual* significant to the case at bar, because it indicates that the rejection by a plaintiff of a settlement offer which is based upon a misrepresentation of fact by the insurer is not necessarily conclusive on the question of whether the plaintiff relied upon the misrepresentation. Baker alleges he was entitled to workmen's compensation benefits for a 62% permanent partial impairment of vision in his left eye, but adjusters for American States, in an attempt to induce him to settle for a smaller amount, knowingly and fraudulently told him that the physicians had rated his impairment at 24.5%. He, like the plaintiff in *Physicians Mutual*, does not purport to have accepted the settlement offer. Nevertheless, he alleges that his true impairment rating was concealed from him so as to defraud him of the full amount of the benefits and to delay their payment to him, causing him great concern, distress, and mental anguish. Bearing in mind that we review a T.R. 12(B)(6) dismissal to determine only whether the trial court could have granted relief under any set of allegations in the complaint, *Cochran v. Hallagan, supra*, we are constrained to hold that the trial court erred in concluding, solely on the basis of the amended complaint, that Baker did not rely to his detriment on false, fraudulent, or misleading statements by American States. We do not by this holding imply that Baker will necessarily prevail on this cause of action. We hold merely that his complaint states a claim upon which relief can be granted and that he is entitled to have his claim decided on the merits.

◼ As we have previously stated, Baker alleges that as a result of the misrepresentation by American States, he suffered great concern, distress, and mental anguish.

The general rule in Indiana is that a person can recover damages for mental anguish only when it is accompanied by, and results from, a physical injury (the "impact rule"). *Indiana Motorcycle Association v. Hudson*, (1980) Ind.App., 399 N.E.2d 775; *Charlie Stuart Oldsmobile, Inc. v. Smith*, (1976) 171 Ind.App. 315, 357 N.E.2d 247, *modified on rehearing* (1977), 369 N.E.2d 947, *trans. denied.* There is, however, an exception to this general rule:

> "Indiana courts have awarded compensatory damages for mental anguish unaccompanied by a physical injury in certain tort actions involving the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance. False imprisonment and assault actions are examples of · instances in which a disagreeable emotional experience would normally be expected to be inextricably interwined with the nature of the deliberate wrong committed, thereby lending credence to a claim for mental disturbance. The conduct of the defendant in such circumstances is characterized as being willful, callous, or malicious, which may produce a variety of reactions, such as fright, shock, humiliation, insult, vexation, inconvenience, worry, or apprehension."

*Charlie Stuart Oldsmobile v. Smith*, 171 Ind. App. at 327, 357 N.E.2d 247. *Accord, Kaletha v. Bortz Elevator Co.*, (1978) Ind.App., 383 N.E.2d 1071. Furthermore, it has been said that "Indiana cases are consistent with most other jurisdictions which allow recovery for mental anguish as an element of compensatory damages in an action for injury to personal property only if the act occasioning the injury was inspired by fraud, malice, or like motives, involving intentional conduct." *Charlie Stuart Oldsmobile v. Smith*, 171 Ind.App. at 328, 357 N.E.2d 247.

In *Charlie Stuart Oldsmobile*, an automobile owner recovered damages from the dealer for both diminution in value of his automobile and for the mental anguish caused by the dealer's negligent attempts to repair the automobile. The Court of Appeals acknowledged the exception to the impact rule but held the exception inapplicable there, because there was no evidence that the dealer's wrongful acts were done intentionally or maliciously. Consequently, the award of damages for mental anguish was reversed.

In *Kaletha*, a debtor of an elevator company sued Bortz Elevator Company, its agent, and the agent of Pinola Elevator Company for the intentional infliction of emotional distress caused by a letter written by Bortz's agent to Pinola's agent. The letter stated that Kaletha (the debtor) owed Bortz a considerable amount of money, and that Kaletha had agreed to pay the debt in grain. The letter further requested the assistance of Pinola's agent in protecting Bortz's lien on Kaletha's grain. The contents of the letter were communicated by telephone to Kaletha and later shown to him by Pinola. Kaletha eventually suffered a coronary ailment which he attributed to emotional distress caused by the letter. The trial court entered a summary judgment against Kaletha. The Court of Appeals affirmed, holding, in part, that because the letter was substantially true and was an attempt either to collect a debt or to inform another possible creditor of the priority of Bortz's lien, and because even Kaletha said that he had no knowledge of his health problems prior to the writing of the letter, the injury claimed by Kaletha was not caused intentionally.

■ If Baker is able to prove his allegations, then the wrongdoing he charges, unlike that in *Charlie Stuart Oldsmobile* and in *Kaletha*, would be intentional. The tort of fraud, if proven, would clearly constitute an invasion of a legal right. Furthermore, the question of whether this kind of intentional invasion of a legal right is likely to cause an emotional disturbance is for the trier of fact. We cannot say as a matter of law that Baker could not, under the allegations of his amended complaint, show that

his claim falls within the exception to the impact rule.

*Issue Four*

Baker asserts in his appellant's brief that because of the misrepresentation by American States he had to employ a private physician to examine him and to make a written report on the degree of his permanent impairment. He claims that he had to pay his physician's fees himself, and that these fees—along with attorney's fees, loss of use of funds, and mental anguish—constitute his actual damages. American States argues that Baker did not refer to medical expenses either in his amended complaint or in his motion to correct errors and has, therefore, waived any claim for physician's fees.

Indiana Rules of Procedure, Trial Rule 8(A) provides that "[t]o state a claim for relief ... a pleading must contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for the relief to which he deems himself entitled." However, Ind.Rules of Procedure, Trial Rule 9(G) states, in pertinent part, that "[w]hen items of special damage are claimed, they shall be specifically stated."

"General damages are such as naturally result from the wrong complained of, which the law implies or presumes to result from such wrong." *Aufderheide v. Fulk*, (1916) 64 Ind.App. 149, 156, 112 N.E. 399, *trans. denied* (1917). The term "special damages" has been defined as follows:

" 'Special damages are such as *actually* result from the wrong done but which do not *necessarily* result therefrom, and for that reason are not implied by law, and to be recovered must be specially alleged and proven.' (Our emphasis.) [Quoting *Aufderheide v. Fulk*, 64 Ind.App. at 156, 112 N.E. 399.] It may be appropriately added that special damages always arise from or grow out of an unusual or peculiar state of facts, which may be known

to one of the parties and not to the other, and follow as a natural and proximate consequence of the wrongful act by reason of the special circumstances or conditions existing in the particular case." (Our insertion.)

*Miller v. Long*, (1956) 126 Ind.App. 482, 497, 131 N.E.2d 348, *trans. den.*

The measure of general damages where a personal injury victim is fraudulently induced to settle for less than he was reasonably entitled to receive is set forth in *Rochester Bridge Co. v. McNeill*, (1919) 188 Ind. 432, 443, 122 N.E. 662:

"The basic principle underlying all rules for the measure of damages for fraud is indemnity for the actual loss sustained as a direct result of the wrong. Applying that principle to the instant case, if it be found that through fraud and deceit a compromise was procured of a valid claim in dispute, the measure of damages would be the amount which the injured party reasonably could have demanded and the defendant would reasonably have allowed as a final compromise above and beyond the sum in fact allowed and received."

In the case at bar, however, Baker does not allege that he accepted American State's settlement offer. If the trier of fact were to find that a fraud was committed despite Baker's refusal of the settlement offer, the above-quoted measure of general damages would be inapplicable.

■ Even in personal injury suits, a plaintiff generally cannot recover special damages for care and medical attention or for the value of lost time unless sufficient facts pertaining to those losses are alleged, *Pittsburgh, C., C. & St. L. Ry. v. Lynch*, (1909) 43 Ind.App. 177, 87 N.E. 40. An exception to this rule with regard to medical expenses has been recognized where the personal injuries are alleged to be serious. *Chicago & Calumet District Transit Co. v. Stravatzakes*, (1959) 129 Ind.App. 337, 156 N.E.2d 902. Here, of course, the harm alleged is not a personal injury, so this exception to the requirement of pleading special damages is inapplicable.

■ Baker's employing a physician to examine him after other physicians had been treating him constitutes an *unusual state of facts* which did not *necessarily* result from American State's alleged misrepresentation. Consequently, Baker's physician's fees are an element of special damages which had to be pleaded specifically in order to be recovered. Baker cannot recover his physician's fees under the allegations of his amended complaint.

*Issue Five*

■ The trial court, in dismissing Baker's amended complaint, stated that punitive damages are not recoverable where the only actual damages are attorney's fees, which the court concluded are not recoverable in this lawsuit. It is true that compensatory damages are a prerequisite to an award of punitive damages. *McCormick Piano & Organ Co. v. Geiger,* (1980) Ind. App., 412 N.E.2d 842; *Newton v. Yates,* (1976) 170 Ind.App. 486, 353 N.E.2d 485, *trans. denied.* As we indicated in our discussion of Issue One, Baker's exclusive remedy for attorney's fees is provided by the Workmen's Compensation Act. On the other hand, under Issue Three we recognized the possibility that Baker could recover damages for fraud, particularly for mental anguish resulting from the alleged misrepresentation by the adjusters for American States.

■ Punitive damages may be awarded where the defendant is shown to be guilty of fraud, malicious or oppressive conduct, gross negligence, or willful and wanton misconduct. *Vaughn v. Peabody Coal Co.,* (1978) Ind.App., 375 N.E.2d 1159, *trans. denied; Brademas v. Real Estate Development Co.,* (1977) Ind.App., 370 N.E.2d 997. The purpose of punitive damages is to punish the wrongdoer and to deter future misconduct. *Vaughn v. Peabody Coal.* If Baker is able to prove his claim of fraud, and the trier of fact determines that compensatory damages are in order, then the trier of fact clearly would be justified in considering an award of punitive damages as well.

Reversed and remanded.

ROBERTSON, J., concurs.

NEAL, P. J., dissents with opinion.

NEAL, Presiding Judge, dissenting.

I respectfully dissent from the majority opinion. The Indiana Workmen's Compensation Act, Ind.Code 22–3–1–1 *et seq.*, provides that the remedy is exclusive. The Act in Ind.Code 22–3–4–12 states that if the Employer (which includes the Insurer by statutory definition) acts in bad faith in adjusting the claim, the Industrial Board may award attorney fees. Baker's complaint rests upon common law fraud which requires a detrimental reliance to recover. However, here Baker did not rely upon the misrepresentations of the insurer, and was not injured thereby except for the expenditure of attorney fees. He did not request attorney fees in the compensation proceedings, and, insomuch as that remedy is exclusive, he cannot recover them in a separate suit. Since the attorney fees are the only actual pecuniary damages alleged, when those damages fail, he cannot recover the derivative damages for emotional distress and punitive damages.

For these reasons, I would affirm the ruling of the trial court.