John W. BAKER, et al., Plaintiffs,

v.

**WESTINGHOUSE ELECTRIC CORPORATION and Monsanto Company, Defendants.**

No. IP 91–626 C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 13, 1993.

David S. McCrea, McCrea & McCrea, Bloomington, IN, C. Joseph Murray, Murray Law Firm, New Orleans, LA, for plaintiffs.

Joseph B. Carney, John R. Schaibley III, Baker & Daniels, Indianapolis, IN, for defendants.

BARKER, District Judge.

## ENTRY

John W. Baker and Norma Baker et al. (collectively the "Plaintiffs") are nine former employees (the "Employee–Plaintiffs") of Westinghouse Electric Corporation ("Westinghouse") who worked at plants that Westinghouse once owned in Muncie and Bloomington, Indiana. The spouses of seven of these employees (the "Spouse–Plaintiffs") also have joined in the Complaint. The Employee–Plaintiffs claim that they were injured from exposure to polychlorinated biphenyls ("PCBs") while working at Westinghouse's plants; the Spouse–Plaintiffs claim loss of consortium resulting from their spouses' alleged injuries. Plaintiffs also set forth claims for injuries resulting from PCB exposure outside the employment setting.

Westinghouse moves the Court to dismiss Counts I through IV and Count VII of the First Amended Complaint. For reasons that will be explained below, the Court grants Westinghouse's motion to dismiss Counts II, IV and VII (fraud in the inducement, restitution, and punitive damages). The Court also grants Westinghouse's motion to dismiss Counts I and III (battery and fraudulent misrepresentation) to the extent that they are based on employment related injuries. As with the Employee–Plaintiffs, the Spouse–Plaintiffs' claims which are not based on work related injuries survive Westinghouse's motion.

The Monsanto Company ("Monsanto") moves the Court to strike portions of the First Amended Complaint. That motion is denied.

## BACKGROUND

Until January 1, 1990, Westinghouse operated plants in Muncie and Bloomington, Indiana. The Bloomington facility, which began operations in 1957, manufactured and repaired electrical power capacitators. The Muncie plant opened in 1961 and manufactured and repaired electrical power transformers. Monsanto sold PCBs to Westinghouse, which Westinghouse used in both plants. Plaintiffs believe that Westinghouse and Monsanto (collectively the "Defendants") "intentionally and knowingly poisoned all Plaintiffs with PCBs...." *First Amended Complaint*, at ¶ 16. According to Plaintiffs, "Westinghouse knew at the time of each job assignment that each Plaintiff would be poisoned by PCBs through inhalation, ingestion, and dermal contact." *Id.* at ¶ 17. Their Complaint sets forth claims against Westinghouse for: battery, fraud in the inducement, fraudulent misrepresentation, unjust enrichment, and punitive damages.

Although Westinghouse apparently advised its employees on several occasions that the work environment it provided was safe, Plaintiffs believe otherwise and have listed a wide variety of injuries that they are convinced resulted from exposure to PCBs in Westinghouse's facilities. *Id.* at ¶¶ 18, 21. At least one physician, Dr. Harold Klawans, has concluded that PCB exposure caused the Plaintiffs' alleged neurological injuries. *Id.* at ¶ 51.

Westinghouse argues that under Indiana law each of the Plaintiffs' purported causes of action fails to state a claim for which relief can be granted, and moves the Court to dismiss this action pursuant to Fed.R.Civ. Proc. 12(b)(6). In its view, Indiana's worker's compensation laws provide the exclusive remedy in this matter. Westinghouse also notes that, as concerns the Spouse–Plaintiffs, Indiana law precludes loss of consortium claims which are based on the spouse's alleged workplace injury. Finally, Westinghouse argues that this cause is barred by Indiana's two-year statute of limitations for personal injuries. *See* Ind.Code § 34-1-2-2.

## DISCUSSION

 In ruling on a motion to dismiss under Fed.R.Civ.Proc. 12(b)(6), the Court must construe the allegations of the complaint in favor of the pleader, *see Scheuer v. Rhodes*, 416 U.S. 235, 236 (1974), and only in the exceptional circumstance where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" will the Court grant the motion. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Although this standard is a high one and is to be scrupulously applied, the Court is not oblivious to "[t]he heavy costs of modern federal litigation ... and the mounting caseload pressures on the federal courts, [which] counsel against launching the parties into pretrial discovery if there is no reasonable prospect that the plaintiff can make out a cause of action from the events narrated in the complaint." *Sutliff, Inc. v. Donovan Co., Inc.*, 727 F.2d 648, 654 (7th Cir.1984).

### I. Claims for Injuries Within the Employment Relationship

#### A. *Count I: Battery*

 The Plaintiffs' first claim is for battery. Westinghouse argues that Indiana's Workmen's Compensation Act (the "Act"), *see* Ind.Code §§ 22–3–1–1 et seq. (Burns 1992), preempts this claim, and directs the Court to its exclusivity provision, which states:

**Rights and remedies of employee exclusive.**—The rights and remedies granted to an employee subject to IC 22–3–2 through IC 22–3–6 on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representatives, dependents or

next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under IC 16–7–3.6.[1] Ind.Code § 22–3–2–6 (Burns 1992). Indiana courts have held that a claim falls within the Act's purview only if it is for: (1) a personal injury or death by accident; (2) arising out of employment; and (3) arising in the course of employment. *House v. D.P.D., Inc.*, 519 N.E.2d 1274, 1275 (Ind.App. 2 Dist.1988), *citing, Evans v. Yankeetown Dock Corp.*, 491 N.E.2d 969, 973 (Ind.1986) (emphasis added). The parties present the Court with lengthy arguments concerning the boundaries of the Act's exclusivity provision.[2]

The parties also cite the Occupational Disease Act (the "ODA"). A claim falls within the purview of the ODA if the employee has suffered: (1) an occupational disease and (2) "disablement" or death. *See House*, 519 N.E.2d at 1275–76. Like the Act, the ODA contains an exclusivity provision. It states:

**Rights and remedies under chapter exclusive.**—The rights and remedies granted under this chapter to an employee subject to this chapter on account of disablement or death by occupational disease arising out of and in the course of the employment shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, at common law or otherwise, on account of such disablement or death.

Ind.Code § 22–3–7–6 (Burns 1992). The ODA uses the following definitions:

**"Occupational disease" defined—Disease arising out of employment.**—(a) As used in this chapter, "occupational disease" means a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall

---

1. This section has been amended since the commencement of this suit. The Court will apply the preamended version, as there is no indication that the legislature intended the amended version to apply retroactively. *See Diaz v. Shallbetter*, 984 F.2d 850, 852 (7th Cir.1993) ("changes in statutes do not apply to pending cases unless the legislature so commands, explicitly.").

2. Given that the theory of the Plaintiffs' First Amended Complaint is that the Defendants intentionally poisoned them` with PCBs, *see* First

Amended Complaint at ¶ 1, and that the Act only applies to "personal injury or death *by accident*", the Act's relevance to this matter may, at first glance, appear suspect. In *Evans*, however, the Indiana Supreme Court interpreted the term "by accident" to mean unexpected injury or death, which does not exclude intentional torts. 491 N.E.2d at 975; *see also Buford v. American Telephone and Telegraph Co.*, 881 F.2d 432, 435 (7th Cir.1989).

not be compensable, except where such diseases follow as an incident of an occupational disease as defined in this section.

(b) A disease arises out of the employment only if there is apparent to the rational mind, upon consideration of all of the circumstances, a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workers would have been equally exposed outside of the employment....

Ind.Code § 22–3–7–10 (Burns 1992). Plaintiffs urge the Court to invoke an intentional tort exception which would remove their claims from the restrictions imposed by the Act and the ODA.

The Seventh Circuit Court of Appeals already has concluded that the ODA does not contain an intentional tort exception. *See Buford,* 881 F.2d at 435 (7th Cir.1989). Plaintiffs have failed to provide any principled basis to distinguish the holding in *Buford.*[3] Although they urge the Court to view their alleged exposure to PCBs as a "violent crime",[4] this judge is unable to perform such a semantic somersault as it would require the Court to ignore the plain meaning of that term.

Besides the ODA, the Seventh Circuit also expressed its view in *Buford* regarding whether the Indiana Supreme Court would recognize an intentional tort exception to the Act:

[T]he Indiana Supreme Court's construction of the term "by accident" in the Workmen's Compensation Act does not suggest that the character of the tort is a consideration in determining the scope of the statute.... *Evans [supra,]* does not support

the notion than an intentional tort/nonintentional tort dichotomy exists under the Workmen's Compensation Act.... *Evans* emphasized that once the statutory criteria for stating a claim under the Workmen's Compensation Act were satisfied, all common law causes of action based on that claim were necessarily preempted. *Id.* at 973. In doing so, the court necessarily repudiated the position adopted by the majority in *National Can [Corp. v. Jovanovich,* 503 N.E.2d 1224 (Ind.App. 3 Dist. 1987)] that public policy considerations were relevant factors in interpreting the scope of the exclusivity provision of the statute. Finally, *Evans* explicitly endorsed the doctrine "that exceptions should not ordinarily be declared by the courts when the legislature speaks broadly." *Id.* at 972. (citation omitted).

*Buford,* 881 F.2d at 435. This Court is bound by the analysis of the Court of Appeals and concludes accordingly that the Act does not include an intentional tort exception.

There being no set of facts which would support the Plaintiffs' battery claim for injuries or disablement sustained within the employment relationship (*i.e.* "arising out of and in the course of the employment," *see* Ind. Code § 22–3–7–6), the Court must grant Westinghouse's motion to dismiss it. *See Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02.

**B.** *Counts II & III: The Fraud Claims*

■ In addition to battery, the Plaintiffs have set forth claims for fraud in the inducement and fraudulent misrepresentation. Westinghouse argues that these claims, like the battery claim, should be dismissed because they are barred by the Act and the ODA. Plaintiffs rely on the holding in *Baker v. American States Insurance Co.,* 428 N.E.2d 1342 (Ind.App. 1 Dist.1981), for the proposition that allegations of fraud are outside the scope of the exclusivity provisions of the workers' compensation laws. *See Plaintiffs Memorandum in Opposition to West-*

---

**3.** Plaintiff's reliance on *Gulden v. Crown Zellerbach Corp.,* 890 F.2d 195 (9th Cir.1989), is totally off point because Oregon, unlike Indiana, recognizes an intentional tort exception to its workers' compensation exclusive remedy provision. *See* ORS 656.156(2).

**4.** The court in *House, supra,* created a violent crime exception to the Act. *See House,* 519 N.E.2d at 1275.

*inghouse's Motion to Dismiss,* at 4. According to Plaintiffs, "[t]he key to maintaining this fraud action is that the plaintiff does not seek workers' compensation benefits as part of his damages. *Wolfe v. Commercial Union Insurance,* 792 F.2d 87 (7th Cir.1986)." *Id.* at 7. Plaintiffs rely on the following passage in *Wolfe:*

> This holding should not be read to preclude a properly drawn fraud action from being brought in the District Court. *See Baker,* 428 N.E.2d at 1346–47; *Gayheart [v. Newnam Foundry Co. Inc.,* 271 Ind. 422], 393 N.E.2d [163] at 166. However, no fraud action has been properly asserted here because Wolfe sought as his remedy the compensation for his personal injuries, which he would otherwise allegedly have received.

*Wolfe,* 792 F.2d at 91. The Plaintiffs' reading of *Wolfe,* [5] that the Act's exclusivity provision bars fraud claims only when the damages sought are workers' compensation benefits, is unduly narrow. The legislative purpose behind the Act and the ODA have been described elsewhere, *see, e.g., Greene v. Westinghouse Electric Corp.,* 573 N.E.2d 452, 453–54 (Ind.App. 5 Dist.1991), and the Court will not bother to add to these accounts. It notes simply that in both instances the legislature made a conscientious choice to provide individuals who are injured in the course of their employment with compensation which, though probably less than what they would receive if they prevailed in litigation, is guaranteed. In return for this payment, employers are relieved of burdensome litigation because the remedy under both the Act and the ODA is exclusive. Allowing a fraud action to proceed when it is based on exactly the same injuries which would have formed the basis of a claim under these laws would defeat the legislative purpose which propelled their enactment. In short, it would provide too large an avenue for plaintiffs to stage an "end run" around the Act's and ODA's exclusivity provisions. Case law provides ample support for this view, which is well established in Indiana law. In *Baker,* which the Seventh Circuit cited in *Wolfe, supra,* the court differ-

entiated between a claim based on an employment related injury (as distinct from a benefit owed), and a claim for fraud against a third party:

> However, Baker is not attempting in his amended complaint to recover damages for his eye injury. Instead, he seeks compensatory and punitive damages for harm allegedly suffered as a result of knowing misrepresentations made by adjusters for American States in an attempt to induce him to settle his claim for permanent partial impairment benefits for less than the amount to which he was entitled.

*Baker,* 428 N.E.2d at 1346; *see also McCutchen v. Liberty Mutual Insurance Co.,* 699 F.Supp. 701, 705 (N.D.Ind.1988). Plaintiffs' allegations of fraud therefore state a claim entitling them to relief, *see Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02, provided that they are "not attempting to recover damages for an injury in the course of [their] employment." *McCutchen,* 699 F.Supp. at 705. Unfortunately for the Plaintiffs, however, the bulk of their claims in the First Amended Complaint seek compensation for employment related injuries. The Act and the ODA preempt the Plaintiffs' fraud claims which are based on injuries which arise out of and in the course of the employment. Counts II and III are dismissed to the extent that they seek compensation for such injuries.

### C. Counts IV & VII: The Remaining Claims

The remaining claims are easily disposed of. In their brief, Plaintiffs state that they "would also not contest the dismissal of Count IV of the First Amended Complaint which alleges an unjust enrichment." *Memorandum in Opposition to Westinghouse's Motion to Dismiss,* at 19. The Court will construe this as a motion to dismiss by order of court. *See* Fed.R.Civ.Proc. 41(a)(2). Count IV is dismissed. The "Seventh Cause of Action" also must be dismissed. It attempts to set forth a claim for punitive damages even though Indiana does not recognize

---

5. Of course, *Wolfe* and *Baker* discussed the exclusivity provision in the Act. The similarity of the Act's and ODA's legislative purpose, *see infra,* and their exclusivity provisions persuades the Court to apply the rationale of those cases to the ODA as well.

a separate cause of action for punitive damages. *See Grimes v. Jones,* 567 N.E.2d 858, 860 (Ind.App. 3 Dist.1991). Count VII is dismissed.

### II. Claims for Injuries Outside the Employment Relationship

▮▮▮▮ Plaintiffs contend that they have set forth claims for injuries which do not "aris[e] out of and in the course of the employment," *see* Ind.Code § 22–3–7–6, and, as evidence of this, direct the Court to certain paragraphs in their First Amended Complaint. *See Plaintiffs Memorandum in Opposition to Westinghouse's Motion to Dismiss,* at 15. Paragraph 23, which is the first of 16 cited paragraphs, *see id.,* is exemplary. It reads:

> Westinghouse operated the plants at Muncie and Bloomington, Indiana where Plaintiffs were employed. At the Bloomington plant, which began operations in 1957, Westinghouse manufactured and repaired electrical power capacitators using large quantities of PCBs purchased from Monsanto as "dielectric" insulating compounds. At the Muncie plant, which commenced operations in 1961, Westinghouse manufactured and repaired electrical power transformers using as dielectric insulating compounds mineral oil that was contaminated with PCBs. At the Muncie plant, Westinghouse used large quantities of PCBs in the manufacturing process.

*First Amended Complaint,* at ¶ 23. As with the other cited paragraphs, if this language somehow alleges a cause of action against Westinghouse for injuries which the Plaintiffs sustained outside of the employment relationship, this Court does not see it. The one exception, however, is paragraph 30, which states:

> Defendants have known at all material times that the local and global PCB contamination of the environment that they have failed to abate was and is resulting in further poisoning of the Plaintiffs. PCBs are persistent, and PCBs unavoidably bioaccumulate and biomagnify in food chains. The PCBs which Defendants have dis-

charged and failed to abate continue to be mobile through numerous environmental pathways, universally contaminate the environment, and thereby contaminate the food Plaintiffs eat, the air they breathe, and the liquids they drink. Defendants' PCBs thus lodge in Plaintiffs' bodies where the PCBs have accumulated and continue to accumulate, continuously and cumulatively re-exposing Plaintiffs to the same poison that caused their original injuries. Plaintiffs' injuries are compounded and exacerbated by this continuing and unabated exposure, and their recovery is prevented or delayed. Because of the nature of PCB carcinogenicity, there is no safe level and *any* additional exposure increases the likelihood of Plaintiffs' further injury.

*First Amended Complaint,* at ¶ 30. Even though this charge suffers from vagueness in that it fails to identify the exact causal relationship between the Defendants' conduct and the Plaintiffs' injuries, or any legal theory entitling them to recovery, given the lenient standards the Court must apply in ruling on a motion to dismiss, it finds that Paragraph 30, when read in conjunction with Counts I and III of the First Amended Complaint, sets forth claims for injuries which the Plaintiffs allegedly sustained outside the employment relationship.[6] *See Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985) ("a court must construe pleadings liberally, and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss."). The Court is willing to take this leap in construction because it is required to construe the allegations of the complaint in favor of the pleader, *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and can not say at this time that the Plaintiffs can prove no set of facts in support of their claims. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The Court will not hypothesize what these facts may be. Count II, "Fraud in the Inducement", must be dismissed even in the nonemployment context, however, because the "inducement" described in the First Amended Complaint is

6. The Court does not read paragraph 30 as a nuisance claim: Plaintiffs did not include "nui-sance" as one of their "Claims for Relief." *See Complaint,* at 26–32

employment. This leaves the Plaintiffs with two viable claims, battery, and fraudulent misrepresentation, both of which must be based on injuries which do not arise out of and in the course of their employment with Westinghouse.[7]

The Court also finds that these remaining claims survive Defendants' statute of limitations challenge, as the pleadings indicate that the Plaintiffs only had full notice of their alleged injuries as of October, 1990, when the National Institute for Occupational Safety & Health announced a statistical association between worker PCB exposure and increased incidence of death. *See First Amended Complaint*, at ¶ 44. In November, 1990, a physician advised Plaintiffs that their neurological injuries had been caused by exposure to PCBs. *See First Amended Complaint*, at 51. In Indiana, when an injury to a plaintiff is caused by a disease which may have been contracted from exposure to a foreign substance, such as PCBs, the statute of limitations begins to run from the date "the plaintiff knew or should have discovered that she suffered an injury, and that it was caused by the product or act of another." *Barnes v. A.H. Robins Co., Inc.*, 476 N.E.2d 84, 87–88 (Ind.1985). The Complaint in this cause was filed on June 7, 1991, which is within Indiana's two year statute of limitations for personal injuries, *see* Ind.Code § 34–1–2–2(1) (Burns 1986), and six year statute for fraud. *See* Ind.Code § 34–1–2–1 (Burns 1986). The Court can find nothing in the pleadings which indicates that Plaintiffs "knew or should have discovered" that they suffered an injury prior to October, 1990. Their claims for injuries outside the employment relationship (*i.e.* battery and fraudulent misrepresentation), are not time barred.

### III. The Spouse–Plaintiffs' Loss of Consortium Claims

The Act's exclusivity provision bars any spouse of an employee injured at work from litigating a loss of consortium

claim based on that injury. *See Greene*, 573 N.E.2d at 456. For the same reasons noted in the Court's discussion of the fraud claims, *supra*, it will apply this holding to the ODA. The claims of the Spouse–Plaintiffs are dismissed to the extent that they are based on the spouses' work related injuries.

### IV. Monsanto's Motion to Strike

Monsanto wants the Court to strike paragraphs 83, 84, 85, and 87 and part of paragraph 80 of the First Amended Complaint because it believes that they are "utterly irrelevant to the present lawsuit." *Brief in Support of Monsanto Company's Motion to Strike*, at 3. Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." As one Indiana court has stated: "Rule 12(f) motions are disfavored and are ordinarily not granted unless the language in the pleading at issue has no possible relation to the controversy and is clearly prejudicial." *Abdulrahim v. Gene B. Glick Co., Inc.*, 612 F.Supp. 256, 260 (N.D.Ind.1985); *see also, U.S. v. Walerko Tool and Engineering Corp.*, 784 F.Supp. 1385, 1387 (N.D.Ind.1992) ("A motion to strike is not a favored motion, as it proposes a drastic remedy".). Having carefully considered the parties' arguments, the Court denies Monsanto's motion. If this case proceeds to trial, any irrelevant matters can be excluded at that time.

### CONCLUSION

The Court's ruling today is not intended to trivialize the diseases which these Plaintiffs may have contracted as a result of their employer's alleged behavior. Rather, the Court has applied laws which are well established in Indiana to the facts in this matter and has reached a result that, based on the cases which have preceded it, is entirely predictable. Accordingly, Westinghouse's mo-

---

**7.** Of course, if Plaintiffs are not able to set forth facts which create a genuine issue concerning such injuries, there will be no need for a trial. A court must enter summary judgment against the nonmoving party if, after adequate time for discovery, the party "fails to make a showing suffi-

cient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

tion to dismiss Counts II, IV and VII (fraud in the inducement, restitution, and punitive damages) is granted. The Court also grants Westinghouse's motion to dismiss Counts I and III (battery and fraudulent misrepresentation) to the extent that they are based on employment related injuries, though the motion is denied to the extent that these Counts relate to acts of the Defendants which occurred outside the employment relationship. The Spouse–Plaintiffs may pursue only those loss of consortium claims which are not based on their spouse's work related injuries. Monsanto's motion to strike is denied.

It is so ORDERED.