**Vonda McCUTCHEN, Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

**Civ. No. H86–398.**

United States District Court,
N.D. Indiana,
Hammond Division.

Oct. 12, 1988.

Richard A. Mayer of Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, Ind., for plaintiff.

Edward N. Kalamaros, South Bend, Ind., for defendant.

## ORDER

MOODY, District Judge.

This matter comes before the court on three motions for summary judgment filed by defendant Liberty Mutual Insurance Co. ("Liberty"). The first motion for summary judgment was filed February 27, 1987. Plaintiff responded to the motion on April 20, 1987. Liberty filed a reply to plaintiff's response on June 1, 1988, to which McCutchen filed a supplementary response on June 16, 1988. Liberty filed a second motion, for partial summary judgment, on July 23, 1987 and plaintiff responded on September 18, 1987. On March 21, 1988, Liberty filed a third motion for summary judgment to which the plaintiff responded on April 5, 1988. For reasons discussed below, defendant's motions for summary judgment are all DENIED.

### I.

In a summary judgment motion, the movant must demonstrate, by way of pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, that (1) no genuine issue of material fact exists for trial, and (2) the movant is entitled to judgment as a matter of law. *Munson v. Friske*, 754 F.2d 683 (7th Cir. 1985). If the nonmoving party would bear the burden of proof at trial on the matter that forms the basis of the summary judgment motion, the burden of proof shifts to the nonmoving party if the movant makes its initial showing, and the nonmoving party must come forth and produce affidavits,

depositions or other admissible documentation to show what facts are actually in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment should be granted only if no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When the parties dispute the facts, the parties must produce proper documentary evidence to support their contentions. The parties cannot rest on mere allegations in the pleadings, *Posey v. Skyline Corp.*, 702 F.2d 102 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983), or upon conclusory statements in affidavits. *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007 (7th Cir. 1985). A party need not try its case by affidavit, but it must set forth some facts from which the court reasonably can infer that the party would be able to produce some evidence at trial to support its theory. *In Re Morris Paint and Varnish Co.*, 773 F.2d 130 (7th Cir.1985).

Any permissible reasonable inferences from the documentary evidence must be viewed in the light most favorable to the nonmoving party. *Matsushita Electronics Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## II.

The parties, while not disputing the basic facts giving rise to this litigation, disagree considerably over the inferences to be drawn from those basic facts. The basic facts, with reasonable inferences drawn in favor of Vonda McCutchen, the nonmoving party, are as follows:

On January 29, 1985, Vonda McCutchen was injured while working at Globe Industries, Inc. ("Globe") in Lake County, Indiana. An explosion occurred while she was spraying an apron of a proctor dryer with chemicals, causing second degree burns to her arms, face and chest. She claims that she also sustained psychological and/or psychiatric injuries secondary to

the accident consisting of a depressive neurosis, severe anxiety and a phobic reaction.

After the accident, Globe notified its worker's compensation carrier insurer, Liberty, of claims being made by McCutchen under Globe's worker's compensation benefits policy. The claims consisted of:

(a) the payment of all medical expenses associated with her bodily or psychiatric injuries;

(b) "temporary total disability benefits";

(c) "permanent partial impairment benefits" to compensate McCutchen for the permanent losses of bodily functions, whether physical or psychological in nature, stemming from the accident.

On February 25, 1985, the parties reached an agreement on the claims which required Liberty to pay temporary total disability benefits at the legal rate of $166.00 per week from and after January 30, 1985, until terminated in accordance with the provisions of the Indiana Workmen's Compensation law. Liberty began paying disability benefits pursuant to the agreement.

During the course of her treatment, McCutchen was seen and treated by several health care providers, of whom one, Dr. Rinck, prescribed that McCutchen consult Dr. S.L. Prasad Babu for psychological and emotional injuries sustained in the industrial accident. On March 7, 1985, Dr. Babu submitted a medical report to Liberty stating that the plaintiff had Depressive Neurosis with Severe Anxiety and Phobic Reaction" related to the work incident and she would need an indefinite period of time for treatment. Dr. Babu advised plaintiff to "stay off work until further advised".

When deposed, Liberty's rehabilitation nurse, Bonnie Moore, said that she informed Sherry Stewart, Liberty's supervisor, prior to Liberty's terminating plaintiff's benefits, that plaintiff was being treated by Dr. Babu, was having psychological problems related to the industrial accident, and was in need of funds to pay her apartment rent. Stephen Bannwart, a Liberty supervisor, also testified that Sherry Stewart knew in March 1985 that

McCutchen was seeing a psychiatrist for work-related injuries. However, a Liberty interoffice memo dated March 12, 1985 recommends:

(a) Hold TTD payments;

(b) Not find any psychiatrist for the plaintiff;

(c) Let her (the plaintiff) get an attorney.

At about this same time, plaintiff called Liberty and spoke with Jim Koenig, an adjuster, to inquire if Dr. Babu's treatment was covered by workers' compensation. Koenig told her that Liberty's policy was not to pay for psychological injuries and that the Indiana workers' compensation law did not provide for such compensation. Plaintiff contends that he laughed at her when she inquired about psyhological care payments.

When deposed, Fred Swan, a Liberty claims manager, said that it was wrong for a Liberty employee to represent to plaintiff that there were no benefits due her under the Liberty policy. He then stated that as a general rule, Liberty does not deny worker's compensation claims without some legal back-up. Furthermore, both Swan and Moore stated that it is not proper to force an injured party to get an attorney.

On March 25, 1985, over McCutchen's objections, Liberty elected to terminate payment of any further benefits. As a result, on March 28, 1985, McCutchen filed a "Form 9" application with the Industrial Board of Indiana naming herself as plaintiff and Globe as defendant and alleging "psychological trauma". In that application, McCutchen raised several issues:

(a) Globe's liability for compensation;

(b) the parties disagreement as to the rate of compensation;

(c) the parties disagreement as to the amount of compensation payable; and

(d) the parties disagreement as to the duration of the time for which compensation is payable.

McCutchen's claims before the Industrial Board continue to pend final administrative adjudication there.

After the filing of her claim before the Industrial Board, Liberty took steps to re-evaluate or confirm whether McCutchen was entitled to further benefits. On January 7, 1986, Liberty had McCutchen examined by Dr. Barbara Rosenfeld, who recommended that plaintiff, having suicidal tendencies, needed immediate care and treatment. Plaintiff hoped to have Dr. Rosenfeld treat her, but Liberty refused to pay for her care. Liberty then sent McCutchen to another doctor, Dr. Arieff, who recommended that plaintiff be treated by a psychiatrist.

Liberty's refusal to provide such care led McCutchen to believe that, rather than attempting to resolve the dispute, Liberty was looking for a reason not to pay benefits. As a result, she commenced the present action by filing a three count complaint on May 6, 1986, which was amended by leave of court on June 20, 1988. Plaintiff claims that she was injured and damaged by fraudulent, tortious, outrageous, malicious and intentional misconduct of Liberty in denying her benefits to which she was entitled under Indiana workers' compensation law. She does not seek as damages the value of the denied benefits: that claim pends before the Industrial Board. She instead seeks damages for the emotional distress and psychological injuries caused by the denial.

### III.

■ Liberty's first motion for summary judgment asserts that an Indiana administrative body has "exclusive jurisdiction" over McCutchen's action. The defendant alleges that the Indiana Workmen's Compensation Act provides an "exclusive remedy provision" and thus, this suit must be brought in front of the Indiana Industrial Board. While that may be the ultimate result, Liberty's jurisdictional argument is wrong. This is a diversity case, and as Mr. Kalamaros, Liberty's attorney, has been told in another case:

28 U.S.C. § 1332 affords the courts of the United States subject matter jurisdiction over suits between citizens of different states in which the amount in contro-

versy exceeds $10,000.00. State law cannot enlarge or contract that grant of jurisdiction. *Beach v. Owens–Corning Fiberglas Corp.,* 728 F.2d 407 (7th Cir. 1984); *Begay v. Kerr–McGee Corp.,* 682 F.2d 1311 (9th Cir.1982). State law may provide that [plaintiff] can state no claim for relief under Indiana law from any entity other than the Industrial Board; if Indiana law so provides, this court will be bound to so hold. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Such a determination would be based upon the strength of [plaintiff's] state law claim, however, and not upon any want of federal jurisdiction. Jurisdiction under § 1332 is based upon the parties' citizenship, rather than upon the law of the forum state or even upon the jurisdictional limits governing the courts of the forum state.

*Jones v. National Union Fire Ins. Co.,* 664 F.Supp. 440, 441 (N.D.Ind.1987).

The exclusive remedy provision of the Indiana Workmen's Compensation Act, § 22–3–2–6, states:

> Sec. 6. The rights and remedies granted to an employee subject to I.C. 22–3–2 through I.C. 22–3–6 on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under I.C. 16–7–3–6.

As defined in I.C. § 22–3–6–1 for the purposes of the Workmen's Compensation Act, the term "employer" encompasses the employer's insurer where applicable. Thus, the exclusive remedy provision also applies to actions against Liberty.

The Indiana Supreme Court has held that I.C. § 22–3–2–6 excludes:

> all rights and remedies of an employee against his employer for personal injury or death if the following three statutory jurisdictional prerequisites are met:
>
> (A) personal injury or death by accident;

> (B) personal injury or death arising out of employment;
>
> (C) personal injury or death arising in the course of employment.
>
> Actions for employee injuries or death which do not meet each of these prerequisites are not excluded; and may be pursued in the courts.

*Evans v. Yankeetown Dock Corp.,* 491 N.E.2d 969, 973 (Ind.1986).

In *Baker v. American States Ins. Co.,* 428 N.E.2d 1342 (Ind.App.1981), plaintiff brought suit against his employer's workers' compensation insurer due to alleged fraudulent misrepresentations by the insurer. The court examined I.C. § 22–3–2–6 and stated that the provision is clearly the exclusive remedy for an employee to pursue "for personal injury or death by accident arising out of and in the course of employment." *Baker* at 1346.

However, the *Baker* court found that the plaintiff was not attempting to recover damages for an injury in the course of his employment. The court stated that I.C. § 22–3–2–6 "does not purport to prohibit actions by an employee against his employer's workmen's compensation insurance carrier for fraudulent misrepresentations made while the employee and the insurer are attempting to settle the claim." *Baker* at 1347. The court went on to say that if the plaintiff's allegations concerning the insurer's behavior prove to be true, "... then it is in the public interest of this state to discourage such activities and to compensate the victim for resulting injury". *Id.* at 1347. Therefore, if an employee alleges a valid fraud claim against his employer's workers' compensation insurer, the employee may sue the insurer in an independent tort action which is an exception to the exclusive remedy provision of the Indiana Workmen's Compensation Act. *Baker,* 428 N.E.2d at 1347; *Jones,* 664 F.Supp. at 444–46.

Defendant, in its first motion for summary judgment, argues that plaintiff's fraud allegations are insufficient under Fed.R. Civ.P. 9(b) and therefore do not bring her action within the exception to the exclusive

remedy provision.[1] Under Indiana law, the essential elements of a fraud claim are as follows: "(a) a material representation of past or existing facts, (b) which representation is false, (c) made with knowledge or reckless ignorance of its falsity, (d) which causes the reliance to the detriment of the person relying upon it." *Vantine v. Elkhart Brass Mfg. Co., Inc.*, 762 F.2d 511 (7th Cir.1985). Reading Rule 9(b) in conjunction with Rule 8, this court finds plaintiff's amended complaint does provide in detail the nature and factual elements of the alleged fraud. Although every instance of fraudulent conduct is not set forth in the amended complaint, defendant is not left guessing as to the outline of the fraud, its purposes, or the critical facts which are purportedly misrepresentations. Therefore, plaintiff has complied with the Federal Rules of Civil Procedure by stating fraud with "particularity" in Amended Legal Paragraph V of her complaint. *Barr Co. v. Safeco Ins. Co. of America*, 583 F.Supp. 248 (N.D.Ill.1984).

Plaintiff's allegations are also sufficient to bring her action within the exception to the exclusive remedy provision. In *Wolfe v. Commercial Union Ins.*, 792 F.2d 87 (7th Cir.1986), a police officer sued his employer's worker's compensation carrier seeking compensatory and punitive damages resulting from the carrier's fraudulent misrepresentation. The court held that the exclusive remedy for the plaintiff who seeks damages measured by the amount of benefits he would have received under the Indiana Worker's Compensation Act, but for carrier's fraud, was with the Industrial Board, rather than the District Court.

The plaintiff in the present case is seeking compensation benefits before the Industrial Board and bases her relief in this court on "injuries and damages due to deceit, conspiracy, fraudulent misrepresentations and violation of public policy of the State of Indiana and also for exemplary and punitive damages in an amount that will deter the defendant from similar or like conduct in the future." (Amended Legal Paragraph V of Complaint). *Wolfe*, therefore, is inapplicable to the facts before the court because plaintiff's damages are not measurable by the amount of benefits plaintiff would have received. Instead, she is pursuing that cause of action with the Indiana Industrial Board. McCutchen's action is more like that in Baker, and therefore falls within the exception. The *Wolfe* "holding should not be read to preclude a properly drawn fraud action from being brought in the District Court." *Wolfe*, 792 F.2d at 91; *Gayheart v. Newman Foundry Co.*, 271 Ind. 422, 393 N.E.2d 163, 166 (1979) ("[Fraud] damages can only be awarded in a court of law.")

Because there is a genuine issue as to the existence of a fraud claim and, as shown above, defendant is not entitled to judgment as a matter of law because claims for fraud are not under the Industrial Board's exclusive jurisdiction, defendant's first motion for summary judgment is DENIED.

## IV.

■ In defendant's motion filed July 23, 1987, it alleges that plaintiff's claim for punitive damages is unconstitutional as a matter of law, and thus, Liberty is entitled to partial summary judgment. Liberty's argument is principally copied from a journal article entitled, "Constitutional Issues in Insurance Claim Litigation" from the *Tort and Insurance Law Journal*, Winter 1987.

---

1. When a party alleges fraud in its complaint, it must state it with particularity. Federal Rules of Civil Procedure 9(b) requires that

> "[i]n all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity...."

The circumstances referred to in the rule concern "matter such as the time, place, and contends of the false representations, as well as the identity of those persons involved." *Barr Co. v.*

*Safeco Ins. Co. of America*, 583 F.Supp. 248, 258 (N.D.Ill.1984) citing 5 Wright & Miller, Federal Practice and Procedure: Civil Section 1297 at 403. However, the particularity requirements stated in Rule 9(b) are limited by the general rules of pleading provided in Fed.R.Civ.P. 8. Rule 8 requires a "short, plain and concise statement of the claim" for relief. This court, therefore, reads Rule 9(b) in conjunction with Rule 8.

Although there is no absolute right to punitive damages in Indiana, the law clearly allows for an award of punitive damages in "appropriate" cases. *Indianapolis Bleaching Co. v. McMillan*, 64 Ind.App. 268, 113 N.E. 1019 (1917). In *Murphy Auto Sales v. Coomer*, 123 Ind.App. 709, 112 N.E.2d 589 (1953), the court stated the reasoning for punitive damages,

> [p]unitive or exemplary damages do not rest upon any ground of abstract or theoretical justice but upon the basis of an established public policy which seeks to promote the public safety and to punish through the medium of a civil proceeding a fraudulent wrongdoer, and where malice, gross fraud and oppressive conduct is shown punitive damages are allowable to deter other wrongdoers from offending in a like manner.

*Murphy* 112 N.E.2d at 592–93. A number of recent Indiana cases have recognized that punitive damages may be assessed against an insurance carrier for its torts or contractual breaches, if the proper evidentiary showing is made. *See e.g., Travelers Indemnity Co. v. Armstrong*, 442 N.E.2d 349 (Ind.1982); *Liberty Mutual Ins. Co. v. Parkinson*, 487 N.E.2d 162 (Ind.App.1985). Therefore, as Indiana law permits punitive damages to be assessed against an insurance carrier in appropriate actions, Liberty may be subject to punitive damages in this action if plaintiff proves, by clear and convincing evidence, malice, gross fraud, or oppressive conduct.

The "appropriate" actions referred to in *Murphy* have developed over time. In *Vernon Fire & Casualty Ins. Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173 (1976), the Indiana Supreme Court discussed punitive damages in relation to contract actions. The *Vernon* court provided two exceptions to the general rule that punitive damages are ordinarily not recoverable in contract actions. The first exception allows punitive damages where "conduct of the breaching party not only amounts to a breach of contract, but also *independently* establishes the elements of a common law tort such as fraud." *Vernon*, 349 N.E.2d at 180. Alternatively, the Indiana Supreme Court stated that punitive damages may be

assessed "[w]henever the elements of fraud, malice, gross negligence or oppression *mingle* in the controversy." *Id.* However, in order for either exception to be applicable, it must "appear that the public interest will be served by the deterrent effect punitive damages will have upon future conduct of the wrongdoer and the parties similarly situated." *Id.; Hibschman Pontiac, Inc. v. Batchelor*, 266 Ind. 310, 362 N.E.2d 845, 848 (1977); *Riverside Insurance Co. v. Pedigo*, 430 N.E.2d 796, 808 (Ind.App.1982); *Ind. & Mich. Elec. Co. v. Terre Haute Industries, Inc.*, 507 N.E. 2d 588, 610 (Ind.App.1987). In tort actions, the appropriate time to award punitive damages is when they are supported by "clear and convincing evidence indicating malice, 'fraud, gross negligence, or oppressive conduct on the part of the wrongdoer." *Jochem v. Kerstiens*, 498 N.E.2d 1241, 1245 (Ind.App.1986). Thus, punitive damages may be awarded in both contract and tort actions pursuant to Indiana law.

The degree of proof required to award punitive damages in contract actions is a "clear and convincing" standard. *Travelers Indemnity Co. v. Armstrong*, 442 N.E. 2d 349, 363 (Ind.App.1982); *Rose Acre Farms, Inc. v. Cone*, 492 N.E.2d 61, 70 (Ind.App.1986); *Jochem* at 1245. This standard of proof was extended to tort actions in *Orkin Exterminating Co., Inc. v. Traina*, 486 N.E.2d 1019, 1023 (Ind. 1986). The Indiana Supreme Court stated that a stricter standard of proof akin to criminal trials is required, rather than the preponderance of the evidence standard employed in trials of civil actions because the concept of punitive damages is penal in character. *Orkin*, at 1022 citing *Travelers*. Furthermore, the court explained that:

> [j]ust as the defendant in a criminal action is cloaked with a presumption of innocence, the defendant, in a claim for punitive damages, is cloaked with the presumption that his actions, though tortious, were nevertheless noniniquitous human failings, i.e. *that he is not guilty of the quasi-crime alleged* ... were it otherwise, there would be no restraint

upon the award of punitive damages upon conflicting inferences. The rule is nothing more than the rule applicable in criminal trials resting entirely upon circumstantial evidence, i.e. the evidence must exclude every reasonable hypothesis of innocence.

*Orkin* at 1023. Thus, only if McCutchen is able to prove by clear and convincing evidence that defendant "caused or exacerbated her damages due to its fraudulent, tortious, outrageous, malicious, oppressive and deceitful misconduct" in handling her claim for medical and disability benefits, may the jury assess punitive damages on Liberty.

■ Defendant also contends that because insurance claim cases seeking punitive damages must be considered criminal in nature, it is entitled to a number of constitutional protections. Liberty relies upon *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) in saying that if a sanction is penal in nature then constitutional safeguards must be applicable. In *Mendoza–Martinez,* the Court determined the punitive nature of a sanction under the tests traditionally applied to determine whether an Act of Congress is penal or regulatory in character. In the case at bar, there is no Act of Congress at issue. Furthermore, this court fails to find any case which applies the *Mendoza–Martinez* analysis to a punitive damages case. Hence, the *Mendoza–Martinez* test is not applicable to the case at bar.

Liberty also cites *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) in support of its alleged right to constitutional protection. In *Breed,* the Court analyzed whether juvenile proceedings were "essentially criminal" for the purposes of the double jeopardy prohibition. The Court eschewed the "civil" label-of-convenience attached to juvenile proceedings and determined them to be "essentially criminal". Thus, the defendant was entitled to the constitutional guarantees associated with traditional criminal prosecutions.

This court fails to find any United States Supreme Court case, Seventh Circuit case, or Indiana case which applies the *Breed* doctrine to punitive damage claims ancillary to a civil cause of action. In *Orkin,* 486 N.E.2d 1019, the Court expressed its awareness of the penal nature of punitive damages. Although it provided a stricter standard of proof, the Court did not extend constitutional protections to a civil defendant in danger of being assessed punitive damages. Therefore, as Liberty provides no relevant support for its alleged right to constitutional protection, this court rejects its argument for constitutional guarantees associated with traditional criminal prosecutions.

Liberty also cites a number of United States Supreme Court dissenting opinions criticizing the jury's discretion in awarding punitive damages. The dissenting Justices express concern over punitive damages in defamation cases chilling the exercise of First Amendment Rights. This court is unable to find any relevant case law supporting defendant's position that it, as an insurance carrier, has a First Amendment right to make allegedly fraudulent misrepresentations. Therefore, as stated previously, no constitutional rights are affected in the present case.

Defendant also cites *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) to support its contention that the United States Supreme Court disfavors punitive damages. In *Smith,* the Court examined 42 U.S.C. § 1983 and determined that the legislative intent behind the statute allowed awarding punitive damages in appropriate cases. In the present case, there is no statute to guide as to legislative intent, but punitive damages have been applied to similar cases in this jurisdiction. Further, although Mr. Justice Rehnquist expressed concern over punitive damages, the majority of the Court acknowledged that the large majority of federal and state courts accept the punitive damage doctrine. Thus, *Smith* does not help defendant in its quest to have this court disallow punitive damages in the present case.

In its motion, Liberty further asserts that the criteria used to determine whether or not punitive damages may be awarded and in what amount are impermissibly vague, imprecise, and inconsistent and urges the court to apply the "void for vagueness" standard used to strike down statutes which violate due process. By the same argument, much of the continually evolving common-law standard of the "reasonably prudent man" could be voided for vagueness. However, the court has found no reported decisions that adopt such a course. To the contrary, since the earliest of times, Indiana has recognized the need to have juries exercise the discretion which defendant now criticizes:

> Where the defendant is sued for the commission of a tort, such as slander, an offense not the subject of criminal punishment, the rule that gives damages "to punish the offender," may, with some degree of propriety, be applied, because it is the only mode in which, by public example, the various rights in community to personal security and private property can, under the sanction of law, be protected from injury and outrage. In such a case, there is wisdom in permitting a jury to "blend together the interest of society and of the aggrieved individual."

*Taber v. Hutson,* 5 Ind. 322, 325 (1854). Accordingly, the court will not find the standards used by juries to assess punitive damages to be "void for vagueness."

Finally, defendant expresses dissatisfaction that punitive damages are only limited by a defendant's wealth. The general rule in cases where an award of punitive damages is justified is to allow evidence of a defendant's financial condition to be admitted to aid the jury in determining punitive or exemplary damages. *Riverside,* 430 N.E.2d at 808. The relevancy of evidence of a defendant's financial condition in cases where punitive damages are justified lies in the purpose of punitive damages. "The purpose of an award of punitive damages is to punish the wrongdoer and thereby deter him and others from similar conduct in the future. Obviously, the trier of fact cannot measure the 'punishment' or the deterrent effect on others similarly situated without knowledge of the defendant's ability to respond to a particular award entered against the defendant." *Id.* at 809. Furthermore, a judge may always reduce a punitive damage award or grant a new trial when he or she feels the verdict was grounded in passion or prejudice. Thus, although defendant may be dissatisfied, there is no merit to its argument, as the justifications allowing evidence of a defendant's financial condition are grounded in Indiana law.

Therefore, as punitive damages are not unconstitutional, defendant's motion for partial summary judgment is DENIED.

### V.

In its third summary judgment motion, Liberty again attacks McCutchen's fraud allegations, but this time on the merits. Liberty argues that it did not misrepresent a "fact," or, put another way, that McCutchen had no right to rely on Liberty's opinion regarding a legal matter, the scope of its coverage; and that plaintiff in fact did not rely on Liberty's misrepresentation that plaintiff was not entitled to psychological treatment as a workers' compensation benefit. She instead immediately hired an attorney. Defendant contends that for either of these reasons, because McCutchen did not rely or had no right to rely, it is entitled to judgment as a matter of law.

Liberty first contends that its alleged misrepresentation made to plaintiff about the workers' compensation law was a mere opinion as to a matter of law. Liberty states that "[i]t is a generally accepted principle that a misrepresentation as to a matter of law ... will not constitute remediable fraud ... the rule is based on the ground that a statement of law is merely an expression of an opinion, and that the hearer has no right to rely on such a statement ..." *Plymale v. Upright,* 419 N.E. 2d 756, 763 (Ind.App.1981).

However, the rule that opinions on legal matters are not actionable is subject to exceptions. "Whether a given representation is an expression of opinion or a state-

ment of fact depends on the particular facts and circumstances of the case. The relation of the parties, the form and subject matter of the representation, and the opinionative quality of the representation are all relevant to the determination." *Id.* In *Reeve v. Georgia–Pacific Corp.*, 510 N.E. 2d 1378, 1383 (Ind.App.1987), where an agent misrepresented the coverage afforded by an insurance contract, the court stated,

> ... the legal effect of a contract, or of a particular provision of a contract, can often be a matter of uncertainty. In such a case one may in all honesty, candor, and sincerity, state his opinion predicting the ultimate interpretation without thereby making a statement of fact. *But what may subjectively be merely an opinion can, nevertheless, be stated as a present existing fact.* If the statement thus made as a representation is not true, but is justifiably relied on as being true, deceit has been practiced. If damage results, liability cannot be avoided on the ground that what was stated as a fact was subjectively intended as merely an opinion. (emphasis added).

Liberty attempts to avoid any application of such an exception in this case, citing the Indiana Supreme Court's statement that the Court is "aware of no instance where it has been held or even urged that the relationship between an insuror and the insured entitles the insured, after a dispute has arisen, to rely upon the insuror's interpretation of the contract." *Travelers Indemnity Co. v. Armstrong*, 442 N.E.2d 349, 364 (Ind.1982).

The Indiana Supreme Court's statement must be placed in context. The Indiana Appeals Court in *Travelers* had held that a fraudulent intent could be inferred because the insurer made no effort to admit or correct its mistake. In reversing, the Indiana Supreme Court noted that there is "no presumption of trust and confidence" between an insurer and insured like that between an attorney and client. Thus, an insured who relies on an insurer's mistake cannot claim fraud. *Id.* The court does not understand this reasoning to mean, however, that an insurer is free to make

knowing misrepresentations with the intent that its insured rely on them. The *Travelers* decision recognizes as much: "This is not to say that the insuror is under no duty to refrain from making fraudulent representations and to act in good faith but only that it is not bound to be correct." *Id.* Under similar circumstances, applying similar Illinois tort, insurance and workers' compensation law, the Seventh Circuit held that a jury could find the insurer's statement that the plaintiff had "no legal rights other than his rights under workers' compensation" was taken by the plaintiff, under all of the circumstances, as a statement of fact. *West v. Western Cas. and Sur. Co.*, 846 F.2d 387, 394 (7th Cir.1988).

The court finds, then, that plaintiff has made a sufficient factual showing to preclude summary judgment. The trier of fact could find that, under the circumstances, Liberty's "opinion" was taken as a fact.

Liberty also argues that the facts show that McCutchen did not in fact detrimentally rely upon the statement. Defendant claims that because plaintiff immediately sought legal counsel, she did not rely on Liberty's alleged misrepresentation. Defendant argues that under Indiana law, the target of a fraud scheme who consults an attorney has, as a matter of law, not detrimentally relied on the fraudulent representation or omission. Defendant distills this principle from the *Travelers* decision, 442 N.E.2d at 349, where the court, discussing whether fraud had been established by clear and convincing evidence in order to support an award of punitive damages, remarked "Plaintiff did not ever rely upon [defendant's] representation, but immediately sought the advice of legal counsel." *Id.* at 364.

Obviously, this statement cannot mean that every fraud victim who hires an attorney negates the element of detrimental reliance—if this were its import, there would be no fraud cases in the books. It can only mean that in the facts found in *Travelers*, where the plaintiff refused to accept the payment tendered by her insurer for fire damage to her farm, instead hiring an attorney, there was no detrimental reliance. By refusing to accept the payment and

seeking legal counsel, the plaintiff was left in no worse a position by the insurer's conduct than she had been before the payment was offered.

In the present case, on the other hand, plaintiff McCutchen was placed in a worse position by defendant's conduct: she chose to forego treatment by a Dr. Barbara Rosenfeld because she could not afford to pay for the treatment herself. The delay in receiving treatment, coupled with her feeling that Liberty "jerked" her "around" exacerbated her injuries, according to plaintiff. This makes the action exactly like that in *Baker*, 428 N.E.2d at 1342. Plaintiff refused to accept the settlement offered by his employer's worker's compensation insurer, and instead hired an attorney. The trial court held that these facts, as a matter of law, showed that plaintiff had not relied to his detriment on misrepresentation made by the insurer. *Id.* at 1347. The Indiana Court of Appeals reversed, holding that because plaintiff alleged that the fraud caused him "great concern, distress, and mental anguish," the complaint stated "a claim upon which relief can be granted and that he is entitled to have his claim decided on the merits." *Id.* at 1348. The court noted that normally "whether the plaintiff relied upon a misrepresentation is a question for the trier of fact." *Id.* Thus, the court will not find as a matter of law that because McCutchen hired an attorney she did not detrimentally rely on Liberty's statements.

Because this court cannot conclude as a matter of law that plaintiff had no right to rely and did not rely on Liberty's alleged misrepresentation, defendant's third motion for summary judgment is DENIED.

## VI.

For the reasons stated above, defendant's motion for summary judgment filed February 27, 1987, motion for partial summary judgment filed July 23, 1987, and motion for summary judgment dated April 5, 1988 are DENIED.