Jeanette PARKER, Plaintiff,

v.

WESTAT, INC., Defendant.

No. CIV.A.2:03 CV 706.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 3, 2004.

Robert Jon Barry, Kaufman & Canoles PC, Norfolk, VA, David John Sullivan, Kaufman & Canoles PC, Norfolk, VA, Daniel Paul Westman, Shaw Pittman LLP, McLean, VA, for defendant.

Sidney Harrison Kelsey, Jr., Sidney H. Kelsey, Jr., P.C., Virginia Beach, VA, for plaintiff.

## ORDER AND OPINION

DOUMAR, District Judge.

This matter is before the Court on the Cross–Motions for Summary Judgment of Jeanette Parker and Westat, Inc. For the reasons discussed below, the Court **GRANTS** Westat's Motion for Summary Judgment and **DENIES** Parker's Motion for Summary Judgment.

### I. Factual and Procedural Background

The following facts are not in dispute: Jeanette Parker ("Parker") was employed by Westat, Inc. ("Westat") as a field worker[1] during the period of time relevant to this lawsuit. Westat and Parker agree that the memorandum dated July 20, 1998 with the subject line "Provisions for Employment as Field Worker" is an employment contract between Westat and Parker ("Employment Contract"). According to the Employment Contract, Parker was required to "maintain insurance to cover comprehensive automobile liability. The limits for bodily injury and property damage shall not be less than $100,000 in total." Empl. Contr. at ¶ 6. Parker was also furnished with a Field Interviewer Training Manual ("Manual"), which advised her that, when renting a car, she should "not sign up for collision insurance or the personal accident insurance. Westat has its own insurance for these purposes." Manual at ¶ 14.2.7.

---

1. As a field worker, or field interviewer, Parker traveled to assigned areas to conduct surveys for Westat. During the time period relevant to this lawsuit, Parker was working as a field worker for Westat's National Survey of Lead Hazards and Allergens in Housing.

On September 5, 1998, Parker rented a vehicle from Avis Rent–A–Car Systems, Inc. ("Avis") in Norfolk, Virginia, in order to travel to Ohio to perform tasks assigned by Westat. Westat was responsible for the payment of fees associated with renting the vehicle from Avis. The rental agreement from Avis shows that Parker refused the following "Optional Services" offered by Avis: (1) Loss Damage Waiver, (2) Personal Accident Insurance, (3) Personal Effects Protection Insurance, and (4) Additional Liability Insurance.

On September 13, 1998, Parker was involved in an automobile accident in Ohio (the "Accident"). The other driver involved in the Accident, Elizabeth A. Maine ("Ms.Maine"), was an uninsured motorist.

In April 2000, Parker filed for workers' compensation benefits due to injuries sustained in the Accident. Parker filed her claim in Maryland.[2] Parker has received workers' compensation benefits in the state of Maryland in the amount of $95,422.50, paid by Liberty Mutual, Westat's insurer for workers' compensation claims. Liberty Mutual's records indicate that there is an additional reserve of $63,547.50 for Parker's claim.

Subsequent to the filing of the claim for workers' compensation benefits, Parker sued Ms. Maine, Liberty Mutual Group (Westat's automobile insurance carrier) and Avis in Ohio state court (the "Ohio Lawsuit") and was awarded a judgment by default in the amount of $160,000.00 on December 11, 2002. Westat was not a party to the Ohio Lawsuit. As a result of the Ohio Lawsuit, Parker received $50,000.00 from GEICO (her husband's insurer), as well as $27,500.00 from Avis,[3] for a total of $77,500.00.

On August 28, 2003, Parker filed a Motion for Judgment against Westat in the Circuit Court of the City of Virginia Beach, seeking to recover $82,500.00. Parker claims Westat is liable for this amount—the difference between the $160,-00.00 default judgment and her $77,500.00 recovery—because Westat is responsible for Parker's underinsurance. Westat was served with the Motion for Judgment on September 5, 2003. Westat removed the action to this Court on October 6, 2003, on the basis of diversity jurisdiction, and filed its Motion to Dismiss on October 14, 2003.

On December 2, 2003, this Court issued an Order denying the Motion to Dismiss, but ordering both parties to file submissions relevant to certain facts which were not established by the pleadings. The Court informed the parties that if the material facts were established at that time, the Court would take the matter under consideration as a Motion for Summary Judgment.

On December 17, 2003, both parties filed Motions for Summary Judgment. On December 31, 2003, the parties filed their responses to the Motions for Summary Judgment.[4] A hearing was held before the Court on January 22, 2004. Thus, the matter is now ripe for judicial determination.

## II. Discussion

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should

---

**2.** Parker also filed for workers' compensation benefits in Virginia in April 2000, but later abandoned that claim.

**3.** Avis, as required by Virginia law, provided uninsured and underinsured motorist coverage in the amount of $25,000 to Parker, as Parker rented an Avis vehicle in Virginia. *See* Aff. of Barbara Vitale ¶ 3.

**4.** The parties were informed that if a response was necessary, they were entitled to file a response by December 31, 2003.

be granted where "the pleadings, depositions [and] answers to interrogatories ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

■ In ruling on a motion for summary judgment, a court views the facts in the light most favorable to the nonmoving party. *United States v. Lee*, 943 F.2d 366, 368 (4th Cir.1991). The moving party has the threshold burden of informing the court of the basis of the motion and of establishing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Catawba Indian Tribe v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir.1992). Once the moving party satisfies this threshold showing under Rule 56(c), the burden of production, not persuasion, shifts to the non-moving party. *Id.* at 322–23, 106 S.Ct. 2548. The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. *See also* Fed. R.Civ.P. 56(e); *Catawba Indian Tribe*, 978 F.2d at 1339. In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To prevent entry of summary judgment for the movant, the non-moving party must demonstrate that there is a genuine issue for trial. Fed. R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

### B. Analysis

#### 1. Exclusivity Bar of the Maryland Workers' Compensation Act

■ First, Parker's claim must fail because Maryland's Workers' Compensation Act, MD. CODE ANN., [LAB. & EMPLY.] § 9–101 *et seq.* (2003) (the "Act"), bars claims against employers for injuries occurring in the course of employment.[5] Section 9–509 of the Act provides that "the compensation provided under [the Act] to a covered employee ... is in place of any right of action against any person." *Id.* at § 9–509(b). The only exception is when the injury is shown to be the result of "the deliberate intent of the employer to injure or kill the covered employee." *Id.* at § 9–509(d).

First, Parker has not alleged deliberate intent on the part of Westat to injure her;[6] indeed, Parker acknowledges that the Accident was just that, an accident. Mot. for Judg. ¶ 9. Second, even if Parker were somehow to allege that Westat deliberately intended to injure her, she has abandoned her right to bring an action for damages by filing a claim for workers' compensation benefits. *See id.* at § 9–509(d) ("If a covered employee is injured ... as a result of the deliberate intent of the employer to injure ... the covered employee, the cov-

---

**5.** Both Westat and Parker agree that Maryland's Workers Compensation Act initially applies, not Virginia's, as Parker applied for and received benefits pursuant to Maryland's Workers' Compensation Act.

**6.** Although an injury may be defined as any wrong or damage done to another, the Court finds that, in this case, "[i]njury is what is actually suffered while damage is the measure of compensation for such suffering." Black's Law Dictionary 354 (5th ed.1979). Because the damages Parker seeks in this lawsuit are same damages sought from the Plaintiffs in the Ohio Lawsuit, the injury suffered must likewise be the same; that is, the injury sustained in the Accident. The injury and resulting damages for which Parker seeks to recover occurred as the result of the Accident.

ered employee ... may: (1) bring a claim for compensation under this title; *or* (2) bring an action for damages against the employer.") (emphasis added); *Tynes v. Shoney's, Inc.*, 867 F.Supp. 330, 332 (D.Md.1994) (if an employee can demonstrate deliberate intent, she has the option to file her claim under Workers' Compensation Act *or* bring a common law tort action for damages against employer). Therefore, because Parker has filed a claim for workers' compensation benefits, and that claim has been paid by her employer, she is barred from bringing an action for the same injuries against her employer.

Parker argues that she is not subject to the exclusivity bar because her action is one for breach of contract, fraud, and estoppel, not for the injuries sustained in the Accident. Pl.'s Resp. to Mot. for S.J. at 6–7. However, this Court finds this argument to be disingenuous. For Parker to maintain that the present action has nothing to do with the fact that she was in an automobile accident strains credulity. Parker seeks to recover from her employer damages sustained as a result of an injury occurring in the course of employment; namely, the damages that the Ohio court awarded her as a result of the Accident. Were it not for the Accident, there would be no cause of action for breach of contract, fraud, or estoppel.

Parker's attempt to characterize her action as a breach of contract claim does not save her. "The all-inclusive character of the exclusiveness principle results in barring actions for covered injuries even though the plaintiff casts his or her action in the form of a breach of some kind of contract." 6 Larson's Workers' Compensation Law § 100.03 (2003). *See also, e.g., Brooks v. Windsor Match Plate & Tool,*

*Ltd.*, 1989 WL 155690 at *1, 1989 U.S. Dist. LEXIS 15226 at *2–3 (E.D.Mich. 1989) ("It is clear that [Plaintiff] brought this case as a contract action to avoid the Michigan Workers' Compensation Act exclusive remedy provision."); *Muller v. Automobile Club of So. Cal.*, 61 Cal.App.4th 431, 450, 71 Cal.Rptr.2d 573 (1998) (Plaintiff's "causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing are barred by the Workers' Compensation Act because they seek damages arising out of alleged discrimination based on a work-related injury."); *Digliani v. City of Fort Collins,* 873 P.2d 4, 7 (Ct.App.Colo.1993) ("plaintiffs may not circumvent the exclusivity doctrine by framing their claims as breach of contract, breach of implied contract, or promissory estoppel."); *Blythe v. Radiometer America, Inc.*, 262 Mont. 464, 866 P.2d 218, 225 (1993) ("If this attempt to create a cause of action for breach of contract ... were to prevail, every employer/employee relationship might involve contractual issues, resulting in exposure of each employer beyond the Act. Such a result would undermine the workers' compensation system.").

Neither may Parker cast her claim as actual or constructive fraud to escape the exclusivity bar.[7] *See, e.g., Baker v. Westinghouse Elec. Corp.*, 830 F.Supp. 1161, 1166 (S.D.Ind.1993) ("Allowing a fraud action to proceed when it is based on exactly the same injuries which would have formed the basis of a claim under [workers' compensation act] would defeat the legislative purpose which propelled [its] enactment."); *Kollman v. IBEW, Local Union 613*, 2003 WL 22047882 at *5, 2003 U.S. Dist. LEXIS 15893 at *16–17 (N.D.Ga.2003) ("the alleged fraud is barred

---

**7.** It is true that a claim for *intentional* fraud may be an exception to the Workers' Compensation exclusivity provision, but because Par-

ker chose to pursue Workers' Compensation benefits, she has abandoned her right to this claim.

by the exclusivity provisions of the Act because these actions arose 'out of' and 'in the course of' Plaintiff's employment."); *Mullen v. American Tel. & Tel.*, 1992 U.S. Dist. LEXIS 19426 at *12 (N.D.Ca.1992) (in California, "workers' compensation provides the exclusive remedy for a fraud claim" where claim involved "employer's fraudulent concealment of a potentially harmful condition from an employee").

Therefore, Parker may not characterize her claims as claims for breach of contract, fraud, or estoppel[8] in order to avoid the exclusivity bar of Maryland's Workers' Compensation Act. Except for certain limited exceptions, of which this is not one, the Maryland Workers' Compensation Act prohibits "... *any* right of action against any person ..." (emphasis added). Because Westat has paid Parker the generous benefits of the Maryland Workers' Compensation Act, Westat has satisfied its obligations under the Act and Parker is barred from bringing her claims. The compensation Parker has received prohibits her from bringing this action against her employer, Westat.

### 2. *Maryland's Uninsured Motorist Law*

■ Next, Parker's claim is barred by Maryland's uninsured motorist law. Under MD. CODE ANN., [INS.] § 19–513 (2003), even if Westat were required to provide uninsured motorist coverage to Parker, any uninsured motorist benefits would be reduced by the amount Parker received pursuant to the workers' compensation act. Parker has received $95,422.50

pursuant to the workers' compensation act, more than the $82,500.00 for which she has brought suit against Westat.

Parker argues again that her suit for breach of contract, fraud, and estoppel has nothing to do with uninsured motorist coverage. Pl.'s Resp. to Mot. for S.J. at 8–9 ("Parker suffered damages to her detriment because of Westat's violations of its employment contract with her, not because Elizabeth Maine was uninsured.") To the contrary, Parker suffered damages exactly because Ms. Maine was uninsured and got into the Accident with Parker. Otherwise, there would have been no Ohio Lawsuit, no default judgment, and no basis for this suit against Westat. Because Parker has received more than her alleged damages through Westat's payment of workers' compensation, her claim is barred under Maryland's uninsured motorist law.[9]

### 3. *Contract, Fraud, and Estoppel Claims*

Parker has alleged the following claims: breach of contract, actual fraud, constructive fraud, and estoppel. The parties agree that Virginia law governs the contract, fraud, and estoppel claims. For the reasons discussed below, even if Parker's claims were not barred by the Maryland Workers' Compensation Act or Maryland's uninsured motorist law, her claims would still be denied.

### a) Breach of Contract Claim

■ With regard to the contract claim, Parker cannot show a breach of the

---

**8.** As discussed below, estoppel is not a recognized cause of action in Virginia, and therefore cannot be the basis for a claim even if such a claim were not barred by the exclusivity provisions of the Workers' Compensation Act.

**9.** Because Parker received workers' compensation benefits paid by Westat (or Westat's

insurer), these benefits are not from a collateral source, and would therefore be deducted from any award to Parker. *See Riffey v. K-VA-T Food Stores, Inc.*, 284 F.Supp.2d 396, 398 (W.D.Va.2003) (citing *NLRB v. Moss Planing Mill Co.*, 224 F.2d 702, 703–04 (4th Cir.1955)).

Employment Contract. The essential elements of a cause of action for breach of contract are (1) a legal obligation; (2) a violation or breach of that duty; and (3) injury or damage to the Plaintiff. *Westminster Investing Corp. v. Lamps Unlimited,* 237 Va. 543, 546, 379 S.E.2d 316 (Va.1989). Because Parker cannot prove a breach of a legal obligation, she has no viable action for breach of contract.

Parker alleges that Westat obligated itself to provide additional uninsured or underinsured insurance coverage for her and that it instructed her not to purchase additional insurance from Avis. Parker alleges that as a result of this instruction, she was underinsured in the amount of $82,500.00, and that Westat is obligated to pay this amount. Because it has not, Westat has breached the Employment Contract. The only mention of insurance in the Employment Contract is a requirement that Parker "maintain insurance to cover comprehensive automobile liability. The limits for bodily injury and property damage shall not be less than $100,000 in total." Empl. Contr. at ¶ 6. Parker was also furnished with the Manual, which she claims is part of her Employment Contract. The Manual advised her that, when renting a car, she should "not sign up for collision insurance or the personal accident insurance. Westat has its own insurance for these purposes." Manual at ¶ 14.2.7.

Even if the Manual were a part of the Employment Contract, Parker's claim has no basis.[10] The Manual advised Parker to refuse (1) collision insurance and (2) personal accident insurance. Parker therefore refused both the (1) Loss Damage Waiver[11] and (2) Personal Accident Insur-

ance offered by Avis, as instructed by Westat. However, neither of these is uninsured motorist coverage, nor are they liability insurance coverage; therefore, even if Parker had signed up for these through Avis, Avis would not have paid the $82,500.00 which Parker seeks to recover. Aff. of Barbara Vitale ¶ 4. First, the collision insurance/Loss Damage Waiver issue is immaterial, as Parker does not ask for any damages related to the damage to the rental vehicle. As for the Personal Accident Insurance, if Parker had paid for this insurance, it would have provided Parker up to $2,500.00 in medical expenses. Aff. of Barbara Vitale ¶ 6. However, Parker has received many times that in workers' compensation benefits, which paid *all* of her medical expenses relating to the Accident. Therefore, even if the language in the Manual were part of the Employment Contract, Westat did not breach the contract, as Westat covered Parker's losses for both "collision" and "personal accident insurance."

Moreover, Parker's Employment Contract required her to obtain $100,000.00 in liability insurance, which would have provided her in Virginia with $100,000.00 in uninsured motorist protection. Parker failed to do this.[12]

#### b) Fraud Claims

Parker alleges both actual and constructive fraud in her Motion for Judgment. However, Parker's fraud claims are barred by the statute of limitations. Virginia has a two-year statute of limitations for fraud. VA. CODE ANN. § 8.01–243 (Michie 2003). Parker knew of the alleged fraud—

---

**10.** This Court does not reach a conclusion as to whether the Manual was part of the Employment Contract, as Parker's claim fails in any case.

**11.** This Court finds that the Loss Damage Waiver offered by Avis is analogous to colli-

sion insurance, as both cover damage to the vehicle driven by the insured.

**12.** Parker claims that the $50,000.00 recovery from GEICO was due to her husband's insurance, not her own. Mot. for Judg. at ¶ 12.

that is, that there was no uninsured motorist coverage—at the latest on May 3, 2000, when Liberty Mutual sent a letter to Parker's attorney, Mr. Kelsey, that read in part "We have reviewed your demand upon our insured, Westat, Incorporated, for underinsured motorist coverage in the above captioned matter. We have also reviewed the provisions of the auto policy issued to Westat. Based on this review, there is no UM coverage available for the loss." Letter from Rose Penberthy to Sidney H. Kelsey, dated May 3, 2000, at Pl. Resp. to Mot. for S.J. at Exh. 1. The statute of limitations for fraud begins to run from the time the alleged fraud is discovered. Va. Code Ann. § 8.01–230. Parker filed her Motion for Judgment against Westat on August 28, 2003, which is more than three years after she was on notice of her fraud claims. Therefore, Parker is barred from bringing the fraud claims under Virginia's two-year statute of limitations for fraud.

#### c) Estoppel Claim

With regard to the estoppel claim, there is no recognized cause of action for estoppel under Virginia law. "The courts of Virginia have stated that equitable estoppel usually operates as a shield, as opposed to a sword, and it does not of itself create a new right or give a cause of action; rather, it serves to prevent losses otherwise inescapable and to preserve rights already acquired." *Meriweather Mowing Serv. v. St. Anne's–Belfield, Inc.*, 51 Va. Cir. 517, 519, 2000 WL 33259936 (Va.Cir. April 25, 2000) (internal quotations and citation omitted).

### III. Conclusion

In short, Parker's claims are barred for five separate and independent reasons: (1) Parker's claim is barred under the exclusivity provisions of the Maryland Workers' Compensation Act; (2) Parker's claim is barred by the Maryland Insurance Code, which mandates that any recovery of uninsured motorist benefits be reduced by the amount of workers' compensation benefits a claimant has received; (3) Parker's breach of contract claim fails because there was no breach of contract; (4) Parker's fraud claims are barred by the statute of limitations; and (5) there is no recognized cause of action for estoppel under Virginia law. Parker alleges that she "has not been fully paid from a judgment she obtained against a third-party for her personal injuries." Pl.'s Mem. in Support of Mot. for S.J. at 8. However, this is entirely untrue. Plaintiff has received $50,000.00 from GEICO, $27,500.00 from Avis, and $95,422.50 in workers' compensation benefits. This amount, which totals $172,922.50, is *more than* the judgment of $160,000.00. Parker has been fully compensated for the damages resulting from the Accident and may not obtain a double recovery by attempting to cast her claim for injuries in a more creative light.

For the reasons discussed above, the Court **GRANTS** Westat's Motion for Summary Judgment and **DENIES** Parker's Motion for Summary Judgment.

The Clerk is hereby **DIRECTED** to forward a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**